## TEXAS EMPLOYERS' INS. ASS'N v. MOORE.

### No. 2186.

Court of Civil Appeals of Texas. Beaumont.
Feb. 5, 1932.

Rehearing Denied Feb. 17, 1932.

Wm. M. Cramer, of Dallas, A. A. Seale, of Nacogdoches, and James P. Swift, of Dallas, for appellant.

Adams & McAlister, of Nacogdoches, for appellee.

HIGHTOWER, C. J.

This suit was filed by the appellee, Murph Moore, in the district court of Nacogdoches county, against appellant, Texas Employers' Insurance Association, to set aside an award of the Industrial Accident Board of this state, made in appellee's favor, the amount of which was less than claimed by him, and which he was unwilling to accept.

Appellant answered by general demurrer and general denial.

The trial was had to a jury, whose verdict consisted of answers to special issues, and, upon the verdict as returned, the trial court rendered judgment for appellee and against appellant, for the sum of $2,363.73, with 6 per cent. interest thereon from April 21, 1931, together with costs of suit. From this judgment appellant has prosecuted its appeal to this court.

Appellant's first contention is that the trial court erroneously overruled its general demurrer to appellee's petition. The precise point advanced by appellant in this connection is that appellee's petition did not allege that the amount involved in his claim before the Industrial Accident Board was in excess of $500, and counsel for appellant contend that, lacking this allegation, appellee's petition failed to state a cause of action in his favor and against appellant, cognizable by the district court.

In disposing of this proposition, we say first that we cannot agree with counsel for appellant in their construction of appellee's

petition. On the contrary, as we construe appellee's petition as a whole, it is quite clear therefrom that appellee's claim as made and acted upon by the Industrial Accident Board was far in excess of $500, and therefore we would overrule appellant's contention in this connection, regardless of the soundness of it as an abstract legal proposition. We would not be understood, however, as agreeing with appellant that the proposition here advanced is sound even as an abstract legal proposition.

■ This court, in a carefully considered opinion written by Mr. Justice Walker, in the case of Texas Indemnity Insurance Co. v. White, 37 S.W.(2d) 277, held that the amount in dollars and cents of a claim as made before the Industrial Accident Board was not the determining factor in fixing the jurisdiction of the court appealed to from the ruling of the board. In that case, we held that the identity of the injury received by the employee, for which he made claim before the board, with the injury shown by his petition in the court appealed to, was the determining factor in fixing the jurisdiction of that court. We thought, after very careful consideration, that we were correct in that holding, and still adhere to it. In the instant case, counsel for appellant do not dispute the fact that the injuries, for which appellee made claim before the board, are identical with the injuries for which he sought recovery in the trial court.

It results from these conclusions that the trial court was not in error in overruling appellant's general demurrer.

■ At the conclusion of the evidence for appellee in the trial court, counsel for appellant presented a written motion to the court, praying for dismissal of the suit, and this was overruled. At the conclusion of all the evidence in the case, counsel for appellant renewed its motion for dismissal of the suit, and the motion was again overruled. The action of the court upon this motion is advanced by counsel for appellant under their second proposition for reversal.

The undisputed facts upon which this motion to dismiss was based are as follows: The award of the board from which this appeal was prosecuted by appellee was made and entered on February 11, 1931. On February 13, 1931, counsel for appellee prepared a written notice to the board, in which it was stated that appellee was dissatisfied with the award, and that he was unwilling to, and would not, abide by it, and that he would file suit in a court of competent jurisdiction within twenty days thereafter to set the award aside. This notice of dissatisfaction was properly addressed to the Industrial Accident Board, and properly posted, but was not actually received and filed by the board until the morning of February 16, 1931, three days after it was mailed to the board. This suit was filed in the district court of Nacogdoches county on the morning of February 14, 1931, two days before the board actually received and filed the notice of dissatisfaction.

Upon these undisputed facts, counsel for appellant makes the contention that, because this suit was filed before the Industrial Accident Board had actually received appellee's notice of dissatisfaction, the district court of Nacogdoches county never did acquire jurisdiction to hear and determine this suit, and that therefore appellant's motion to dismiss for want of jurisdiction was erroneously overruled.

We cannot agree with learned counsel for appellant in their very technical, and what seems to us to be very unreasonable, construction of section 5 of article 8307, Rev. Civ. St. 1925. As we construe this statute, the Legislature did not provide, and did not intend to provide, that a party to a claim before the Industrial Accident Board, and who may be dissatisfied with the ruling and decision of the board, and who in due time gives notice of his dissatisfaction and unwillingness to abide by the board's ruling, must wait until his notice of dissatisfaction, etc., has been actually received and filed by the board before he can file suit in a court of competent jurisdiction to set the board's ruling aside. We think that the reasonable and proper construction of this statute is that any party to a claim before the Industrial Accident Board, and who is dissatisfied with the ruling of that board on the claim, and who in due time gives notice to the board of his dissatisfaction with its ruling, and of his intention not to abide by it, may then file his suit in the proper court, and jurisdiction is thereby conferred upon the court to hear and determine the suit, even though the board had not actually received the notice of dissatisfaction at the time the suit was filed. And we hold in this case that appellee gave due notice to the Industrial Accident Board of his dissatisfaction of its award, and of his intention not to abide by it, and that he would file suit in the proper court to set it aside, when he prepared and properly addressed and posted his notice to the board, as we have shown above.

We believe that, if we were to sustain the contention made by counsel for appellant in this connection, we would be giving the statute relating to this point a most technical and unreasonable construction, notwithstanding what was held by our Supreme Court in Mingus v. Wadley, 115 Tex. 551, 285 S. W. 1084. The precise point made here, however, was not in that case.

■ Appellant, by its third proposition for reversal, challenges the answer of the jury to special issue No. 2. That issue was as follows: "Do you find from a preponderance of

the evidence that such injuries, if any, resulted in his total incapacity to perform labor?" The jury's answer to this issue was "Yes." It is appellant's contention that this answer is against the great weight of the evidence; so much so, that to let it stand would result in a manifest wrong and injustice. In disposing of this contention, we will say, at the outset, that it is not our purpose to detail at length the evidence relative to this issue as adduced upon the trial, for the reason that it would serve no useful purpose to do so, and we shall confine our discussion in this connection to a statement of the material facts, which the evidence conduces to prove.

After a very careful review of the entire statement of facts, we have reached the conclusion that nearly all of the material evidence bearing upon special issue No. 2, as submitted to the jury, was without dispute. This evidence shows the following facts: The appellee, Murph Moore, on July 14, 1930, was an employee of the Tilford-Hunt Lumber Co. in Nacogdoches county, near the city of Nacogdoches. On that day he was engaged, along with other employees, in loading logs from a skidway onto what is called in sawmill parlance a "buggy," or "dolly," or "truck," which logs were to be conveyed from the skidway into the mill shed of the lumber company, which was near the city of Nacogdoches. On the particular day that appellee was injured, he and two other employees, Jewel Smith and Gus Smith, were lifting these logs from the skidway onto the truck, as we shall call it, and on this particular occasion these three employees had placed upon the truck about all the logs it had the capacity to carry, but they attempted to double deck the truck, as they stated, and were lifting a log to the very top of the load. Jewel Smith was at one end of this log, Gus Smith at the other, and appellee was somewhere between the two Smiths. As they proceeded to raise the log from the skidway to the top of the loaded truck, for some reason the end of the log held by Jewel Smith got loose from his grip when not expected, and this caused Gus Smith, at the other end of the log, to loose his grip on the log, as the same was hoisted above the heads of these employees, and this left appellee as the only man sustaining the weight of the log, and the weight was so great, that he could not sustain it, and the log came down with him bearing its full weight. According to the evidence as we understand it, this log was about 16 feet in length, about 12 inches in diameter at one end, and about 6 inches in diameter at the other end. Immediately after this accident, and while appellee was still in a stooping position over the log, and unable, seemingly, to straighten up, he made exclamations of pain, and stated that he was hurt, and told the two Smiths to get him away from there and have something done for him as soon as possible. Thereupon he

was taken aside by two men, and was laid down on the premises near where the loading of the truck was going on, and, as soon as they could do so, two other employees assisted appellee to an automobile and carried him from the place of the injury as quickly as they could to the office of Dr. Clarence T. Smith in the city of Nacogdoches for treatment. When the automobile arrived at Dr. Smith's office, appellee's condition was such that it required the assistance of two men to carry him from the car into Dr Smith's office, and he was suffering much pain in the region of the small of his back on the left side, and gave frequent exclamations of his pain and suffering. Dr. Smith later testified as a witness for appellant that appellee was in so much pain and agony at the time he was brought to his office that he was compelled to administer to him a hypodermic injection with a view to relieving his pain and suffering before he could examine him touching the nature and extent of his injuries.

Dr. Smith's examinations of appellee disclosed no external injuries anywhere about appellant's body, and there was nothing to indicate any injury to appellee except his pain and suffering, which was very apparent. Dr. Smith did what he could to relieve appellee's suffering at the time, and he was taken to his home by the two men who had brought him to the doctor's office. It appears that Dr. Smith saw and treated appellee every day or so after this, and about the fourth or fifth day after the injury to appellee's back he also complained to Dr. Smith that his left eye was causing him considerable pain, which was not mentioned when he was first carried to Dr. Smith's office. Dr. Smith was unable to detect, at that time, any injury to appellee's eye, and could see no reason for any complaint by appellee as to his eye. Dr. Smith continued for several weeks thereafter to treat appellee, during all of which time appellee complained of pain and suffering in his back and left side, and also continued to complain of suffering in his left eye. Being unable to find any external evidence of injuries to appellee, and, being unable to account for his pain and suffering in his back and left side and left eye, Dr. Smith advised that he be removed to the main medical office of appellant at Jacksonville, Tex., and be treated there. This was done, and appellee was carefully examined by two physicians at Jacksonville, one of whom was an expert in the use of the X-ray, and this instrument was used with a view to locating and determining the nature of appellee's injuries, if any, to his back and left side. After this examination had been made, however, the physicians at Jacksonville were unable to locate any injuries to appellee's spine, or side, that is to say, the X-ray failed to show any broken or dislocated bones of the spine or any other injuries that could account for his continued pain and suffering,

and the Jacksonville physicians discharged him, believing that he had no serious injuries to his back or side, or to any other portion of his body, and he returned home to Nacogdoches no better off than when he went to Jacksonville.

The Jacksonville physicians also examined appellee's eye, which he claimed was still causing him pain and suffering, but they found only what they thought was a cataract which had grown over the lens of his left eye, and had caused total blindness in that eye. It was the opinion of the Jacksonville physicians that this blindness in appellee's left eye was not caused by any injuries to his back or side, or by any other physical injury, but in their opinion this blindness was caused solely by the cataract which had grown over his eye. To state it more strongly for appellant in this connection, we will say that the Jacksonville physicians were of the opinion that appellee's blindness could not possibly have been caused by any character of injury to his back or side, caused by any sudden strain whatever.

Dr. W. M. P'Pool, who specializes in diseases of the eye, ear, nose, and throat, and who is conceded to be a competent man in that line of work, in which he has been engaged for a period of about twenty-two years, was a witness upon the trial for appellee, and his testimony in this record is quite voluminous. The substance of the material parts of his testimony is as follows: His first examination of appellee's eye was on the 25th day of October, 1931, and was made for the purpose of ascertaining the nature and extent of the injury to appellee's eye. At that time Dr. P'Pool discovered, by the use of an instrument known in his profession as the opthalmascope, that there had been an apoplexy of the retina of appellee's left eye. This doctor was very positive in his testimony, and stated in detail the condition of the eye discovered by him at that time, which led him to the conclusion that apoplexy of the retina had taken place. At that time there was still slight blood clots in the eye near the center of the retina, which was conclusive to this doctor that apoplexy had taken place, and had produced total blindness in appellee's left eye. This doctor was unable to say how long blindness had existed, but was very positive that, regardless of how long this condition had existed, it had been produced by an apoplexy or rupture of the retina. He was also very positive that an apoplexy, such as he found had been produced in this case, might be caused by a sudden and very severe strain, such as heavy lifting, or sustaining, suddenly, the weight of a heavy object. At the time Dr. P'Pool made his first examination, he found no evidence whatever of any cataract in appellee's eye, and was positive that there had been none. He again

examined appellee's eye about two weeks before the trial, and testified that even at that time there was still indication to him of the apoplexy of the retina that he had first found in October before. He testified that there was no hope that appellee's vision would ever be recovered.

We shall now mention a few of the physical facts which we think are shown without dispute in this record. The appellee, Murph Moore, is a negro man about 32 years of age. It is shown by his testimony that he had been working at times for the Tilford-Hunt Lumber Company, his employer, whenever his services were in demand, since about 1912, as a common laborer around the company's mill, and that he was a steady and efficient laborer when his services were wanted. Up to the time he received his injuries on July 14, 1930, he was a sound and vigorous man in every respect, and one of appellant's physician's testified that he was an unusually muscular man. There was no testimony whatever tending to show that he had ever had any defect in either of his eyes, or that he had ever complained of any physical weakness whatever. The record shows that at the time he was injured he had then been working almost steadily for his employer for the period of twelve months next preceding, and had been working practically six days a week, every week, and always engaged in heavy labor, which he was only fitted to do. Since his injuries on this occasion, he has been wholly unable to do any physical labor whatever, though he tried on several occasions to do light work about his little farm and garden, but was prevented by the pain and suffering that it caused. The testimony shows that, when he attempts to do any work requiring any considerable physical effort, he became restless and weak and nervous, and could not sleep at night. His wife was a witness on the stand, and testified that sometimes appellee, since his injuries, had attempted to walk from his home to the town of Nacogdoches, a distance of five miles, but that when he returned he was almost exhausted, and showed considerable restlessness at night.

All of the testimony in this record, of both physicians and laymen, who knew appellee before his injuries here complained of, testified that he appeared to be healthy and vigorous, and capable of doing the hardest kind of labor. These same witnesses testified that since appellee's injuries they have noticed what they called a "hopity-hop" in his walk, and that he seems to be unable to walk as he did before, but always walks in a stooped or inclining position. There was no attempt whatever by appellant to dispute or contradict any of this evidence.

We have reached the conclusion, after a careful consideration of the entire evidence, that this negro received injuries on July 14,

1930, while an employee in the discharge of his duties, that have resulted in total and permanent incapacity, and that the jury's finding, as to this issue was not against the overwhelming weight of the evidence. We have been at a loss to understand, after reviewing this record, why appellant denied all liability when this negro's claim for compensation was presented. If the verdict and judgment in his favor had been for an amount materially larger than that which was awarded him, this court would not hesitate to affirm the judgment on that point.

■ Another contention for reversal made by appellant is to the effect that the trial court erroneously admitted certain testimony by the witness Dr. P'Pool over appellant's objection that it was hearsay. We have examined the bill of exception in this connection, and found no difficulty in concluding that this contention should be overruled. Appellant's precise contention in this connection is that Dr. P'Pool was consulted by appellee merely for the purpose of making a witness of him in this case, and not for the purpose of professionally examining appellee with a view to ascertaining the extent of the injury to his eye, nor for the purpose of treating him at all professionally. As supporting this contention, counsel cite in their brief the case of T. & N. O. Ry. Co. v. Stephens (Tex. Civ. App.) 198 S. W. 396, 407. This court is familiar with the rule discussed in the cited case, and, in fact, the writer of this opinion tried that case as attorney for the railway company, and made the point here contended for by counsel for appellant. The facts in that case, however, on this point, were so different that there is no analogy whatever between that case and this. In the Stephens Case one of the main contentions made by the plaintiff, and strenuously denied by the railway company, was that Mrs. Stephens had suffered a miscarriage. Just one day before that case was called for trial Mrs. Stephens for the first time called upon Dr. Nash, a practicing physician in the town of Liberty, for the purpose of giving him what she called the entire history of her case, at which time she gave a full and lengthy description to Dr. Nash of her injuries, that is to say, how they were caused while she was a passenger on the train, and how she suffered in consequence of her injuries, and stated to Dr. Nash in that connection that she felt sure that she had suffered a miscarriage as a result of the injuries. The undisputed facts showed that Mrs. Stephens had consulted Dr. Nash for the sole purpose of acquainting him with the history of her case, and to thereby enable Dr. Nash to testify as an expert that in his opinion Mrs. Stephens had suffered a miscarriage. The bill of exception saved by the railway company in that case showed clearly that Dr. Nash was not consulted by Mrs. Stephens for the purpose of ascertaining her condition at the time he was consulted, and that he, in fact, had only made a superficial examination of Mrs. Stephens, and that he based his opinion that she had suffered a miscarriage upon her statement to him of the history of her case. The bill of exception in this case touching the testimony of Dr. P'Pool makes no such showing. All of Dr. P'Pool's testimony in this case touching the cause and extent of the injuries to appellee's eye was based upon two thorough examinations, carefully made by Dr. P'Pool with a view to ascertaining what the condition of appellee's eye was at each examination made by him. We think his testimony shows very clearly that all the material evidence he gave was based upon what he actually found upon his examination of appellee's eye. We overrule appellant's contention on this point.

■ Another contention made by appellant is that the trial court was in error in refusing to grant it a new trial because of improper argument by one of appellee's counsel before the jury. The bill, in this connection, fails to show any objection whatever to the argument at the time it was made, and also fails to show that appellant made any request of the court at any time to instruct the jury to disregard the argument. This being true, this court would not reverse for improper argument by counsel, unless the same was of such nature, that is to say, so highly inflammatory or prejudicial, that objection to it and request for instruction to disregard it would probably not have removed the effect of the argument. We have examined the bill in this connection, and find that the remarks of counsel now complained of were not of an inflammatory nature at all.

There are other contentions made by counsel for appellant in their brief, which we have examined in comparison with the record, but we overrule then without discussion.

It results from these conclusions that the judgment of the trial court should be affirmed, and such has been our order.