## FIDELITY & CASUALTY CO. OF NEW YORK v. NEAS et al.*
### No. 8522.

Circuit Court of Appeals, Fifth Circuit.
Nov. 29, 1937.

Austin Y. Bryan, Jr., of Houston, Tex., for appellant.

Brantly Harris and Geo. W. Coltzer, both of Galveston, Tex., for appellees.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

SIBLEY, Circuit Judge.

The case is one of compensation for the death of John H. Neas under the Workmen's Compensation Law of Texas (Vernon's Ann.Civ.St.Tex. art. 8306 et seq.). The main question is whether the evidence authorized submission of the claim to the jury.

It is uncontested that Neas, 36 years old and weighing 160 pounds, was for 14 years a lineman of the Houston Lighting & Power Company, and accustomed to climbing electric light poles. He had been suffering with high blood pressure. On Nov. 17, 1934, the plaintiff's evidence showed him in the line of his duty ascending one pole and immediately afterwards descending another pole, and on reaching the ground staggering towards his truck, which he could not manage, and slumping down in the seat. Taken to the hospital, his blood pressure was found high, and he died in a few hours of massive cerebral hemorrhage. The physicians all agree on hemorrhage as the cause of death, and that it was due to the giving way of weakened arterial walls in the brain. They agree that an increase of blood pressure would result from physical exertion and could precipitate such a hemorrhage, and also that the hemorrhage could occur without any violent exertion. On hypothetical questions some physicians thought the climbing of two poles in succession could and did cause the hemorrhage

*Rehearing denied Jan. 13, 1938.

138

to begin on the spot, and some thought that because that exertion was habitual to Neas it did not cause his hemorrhage. It was also disputed whether he ever climbed the poles at all that day.

The jury could find that Neas climbed both poles in immediate succession, and that his hemorrhage was precipitated by that exertion. The hemorrhage, though outwardly invisible, was a "damage or harm to the physical structure of the body" within the statutory definition of an injury. Article 8309, § 1. But the statute further requires that the injury shall have originated in the work of the employer while the employee was engaged about its furtherance. We think the jury could reasonably conclude that the climbing of the two poles, involving an exertion of most of the muscles of the body in a rather violent way, was the direct and immediate cause of the arterial break, and that it then and there occurred, and would not have occurred but for the exertion.

But it is further urged that there must have been an accident in the work, something that unexpectedly caused unusual exertion or overstrain, and that there is nothing to show that anything of the sort occurred to this lineman. Since the evidence is clear that hemorrhage may occur in one suffering with high blood pressure without such an accident or unusual occurrence, we agree that there is no basis in the evidence for inferring one. But the statute does not require that an accident in that sense must have happened. It does not, as many such statutes do, expressly require that an accident shall have happened. It is true that the Supreme Court in Middleton v. Texas Power & Light Co., 108 Tex. 96, 185 S.W. 556, declared that the statute covered only industrial accidents, but it was in order to distinguish willful injuries, the jury remedy for which was thought guarded by the Texas Constitution. Nothing was intended to be written into the statutory definitions. And this court in Salinas v. New Amsterdam Casualty Co., 67 F.2d 829, used the expression accidental injury, describing it as one "occurring unexpectedly and not in the natural course of events, and must be capable of being traced to a definite time, place, and cause," in order to distinguish an occupational disease not so traceable. The arterial injury which happened to Neas was not a willful injury, and was unexpected and not in the usual course of events, and is traced to a definite time, place, and cause. Our decision in Henderson v. Maryland Casualty Co., 62 F.2d 107, 109, states the law clearly as to when such an injury to a diseased person originates in his employment and when it is to be referred to his disease. The test is not whether the exertion or strain which immediately caused the injury was unusual in his work, but whether it was beyond that which members of the public not so employed ordinarily would incur. If not unusual in the latter sense, the employment is not to be charged with the injury, though it happened while the sufferer was at work; but if as a member of the public he would ordinarily not incur such strain, an injury the result of the strain originates in the work, although a diseased condition may have made the worker more vulnerable. We there said: "Death from disease * * * from causes operable equally on the general public is not compensable under the statute, although it occurs while decedent is at work." We refused compensation because "Henderson had no accident, suffered no strain, was doing nothing unusual or violent, and was exposed by his work to no heat different from that operating upon other people out of doors."

In the present case Neas was required by his employment to climb poles, involving an exertion far greater than members of the public would ordinarily undergo. If that exertion then and there caused a brain hemorrhage which would not otherwise have happened, there was an injury originating in the work for which the statute requires industry to make compensation. Cases under accident insurance policies are not in point, nor those under statutes which compensate only in case of accident. In Texas and elsewhere hemorrhage in diseased persons due to overexertion at work have generally been compensated. Texas Employers' Ins. Ass'ns v. McGrady (Tex.Civ.App.) 296 S.W. 920; Security Union Ins. Co. v. Alsop (Tex.Civ.App.) 1 S.W.2d 921, and cases cited therein; Maryland Casualty Co. v. Allen (Tex.Civ.App.) 22 S.W.(2d) 329; Texas Employers' Ins. Ass'n v. Moore (Tex.Civ.App.) 46 S.W.2d 404; Fidelity Union Casualty Co. v. Martin (Tex.Civ.App.) 45 S.W.2d 682; Hurd v. Republic Underwriters (Tex.Civ.App.) 105 S.W.2d 428; Guzman v. Maryland Casualty Co. (Tex.Sup.) 107 S.W.2d 356; notes in 19 A.L.R. p. 101; 28 A.L.R. p. 206; 60 A.L.R. p. 1304; Brodtmann v. Zurich General Accident & Liability Ins. Co. (C.C.A.) 90 F.2d 1.

We find no error in the form of hypothetical questions permitted, nor in the charges refused in view of those given.

The judgment is affirmed.