## FEDERAL UNDERWRITERS EXCHANGE v. PRICE.

### No. 2056.

Court of Civil Appeals of Texas. Eastland.

Nov. 8, 1940.

Rehearing Denied Dec. 6, 1940.

952

Touchstone, Wight, Gormley & Touchstone, of Dallas, for appellant.

E. W. Napier, of Wichita Falls, for appellee.

GRISSOM, Justice.

This is a Workmen's Compensation case. Walter Price instituted this suit against his employer's insurance carrier, Federal Underwriters Exchange, to recover compensation for disability alleged to have resulted from injuries suffered on or about the 15th day of July, 1937. Said injuries were alleged to have resulted by reason of oil being accidentally spilled or blown on plaintiff's legs, causing an infection or poisoning to set up on his legs and body, rendering him totally and permanently disabled.

The defendant answered by general demurrer, exceptions, general denial, and a special answer in which it denied that plaintiff sustained any accidental personal injury while working about a well on his employer's lease "after January 17, 1937." Defendant further alleged "that whatever infection or skin eruption the plaintiff may have suffered * * * was not the result of any accidental injury suffered by plaintiff since January 17, 1937 at which time the plaintiff claims that he sustained burns to certain portions of his body which resulted in certain skin eruptions and for which he has been paid compensation by the defendant, and on or about July 18, 1937, the plaintiff executed and delivered a compromise settlement receipt in full compromise, settlement, accord and satisfaction of all compensation and claims for compensation which he had or could have had against defendant by reason of injuries received by him on or about the 17th day of January, 1937, and on occasions thereafter connected therewith, which said compromise agreement was approved by the Industrial Accident Board of Texas on July 25, 1937, whereby all claims for compensation that plaintiff then had or might thereafter have as an employee of George B. Ray from skin eruptions in the future were fully compromised, settled and satisfied, and the alleged infection or poisoning * * * which the plaintiff alleges set up on both of his legs and body for which he sues herein, are connected with the alleged injury of January 17, 1937, and the infection or poisoning resulting therefrom and is merely a recurrence thereof, for which the plaintiff has been heretofore fully satisfied by the defendant and plaintiff cannot be heard to recover again for such infection or poisoning for which a settlement and accord has been entered into and fully satisfied."

In answer to the special issues submitted, the jury found: (1) That plaintiff sustained an injury while operating a rod-pulling machine on or about the 15th day of July, 1937; (2) that such injury was accidental; (3) that said injury was sustained while in the course of his employment with George B. Ray; (4) that plaintiff suffered disability as the result of such injury; (5) that said injury was a producing cause of plaintiff's disability; (6) that plaintiff was not totally disabled; (8) that plaintiff suffered partial disability as a result of such injury; (9) that such partial disability existed from July 15, 1937, until the date of the trial; (10) that during said period plaintiff was disabled 75 percent; (11) that plaintiff will suffer partial disability as a result of such injury; (12) for the remainder of his natural life; (13) that the extent of plaintiff's future partial disability will be 5 per cent; (14) that plaintiff told his foreman about said injury within thirty days after its occurrence; (15) that there was not another employee of the same class as plaintiff who worked substantially the whole of the year immediately preceding the time of plaintiff's injury in the same or similar employment in the same or a neighboring place; (16) that the average weekly wage of plaintiff for the year immediately preceding July 15, 1937, deemed just and fair to both parties was $28 per week; (17) that plaintiff's disability was not brought about solely by his being burned on January 17, 1937; (18) that plaintiff's incapacity was not caused solely by being sprayed with oil on an occasion or occasions other than on or about July 15, 1937; (19) that plaintiff's present incapacity was not caused solely by being sprayed with oil while working for Hart & Taylor in April, 1938. The court rendered judgment for plaintiff on said verdict against defendant for the sum of $1,222 and $69.30 accrued interest. The defendant has appealed.

The defendant's first proposition is that the court should have directed a verdict for it because plaintiff and defendant, on July 6, 1937, entered into a compromise settlement agreement which was approved by the Industrial Accident Board in accordance with which defendant paid plaintiff $85 and which said agreement released defendant "from the injuries and incapacity for which plaintiff sues." It is undisputed that about January 17, 1937, plaintiff received burns while working for

954

George B. Ray, his employer in the present suit. As a result of the burns plaintiff was off from work from January 17 until February 14, 1937. He signed a compensation settlement receipt acknowledging payment of compensation for this period of disability. He returned to work about February 14, worked for about two weeks and then a breaking out, similar to that alleged to have caused the incapacity for which he here sues, started from the burn on the lower part of his left leg and began spreading until it was solid over his leg. After two or three weeks of this irritation plaintiff stopped work and was under the care of doctors. He was absent from work at this time for about five weeks; that is, from about May 15 until June 26, 1937. His claim for compensation was reopened and further compensation was claimed because of the breaking out. The plaintiff was paid additional compensation. In connection with this additional claim for compensation, plaintiff made an affidavit in which the manner in which he suffered the burns and the payment of compensation therefor were recited. The affidavit contained the following statement: "For some unknown reason infections, eruptions, irritations and diseases began to develop over my body and particularly on both legs and ankles and thighs after I had been back working for about ten days." It also contained the further statement: "My condition now is satisfactory, but of course I realize that such eruptions or irritations may again arise and that after working on said lease I may again be obliged to quit work and continue with some medical treatment. I do not know whether the conditions above described that have occurred since I returned to work on February 15, 1937 are in any manner related to the accident and injuries and burns that I received on or about January 17, 1937."

Plaintiff's testimony is, in substance, that he completely recovered from the burns and the skin irritation above referred to, and returned to work for the same employer in June, and about July 15, 1937, while removing wet tubing from an oil well he had oil blown on him and he became saturated with oil, especially from his waist down. That since said occurrence, on or about July 15, 1937, whenever he gets oil on him he suffers skin irritations and eruptions which cause incapacity. The substance of the medical testimony relative thereto is that plaintiff had developed an allergy to oil and that hereafter as long as he lives when he comes in contact with oil he will suffer these skin eruptions and that this will result regardless of what portion of his body comes in contact with oil, that is, regardless of whether or not the portions of his body that were burned on January 17, 1937, come in contact with oil. To sustain its first proposition, defendant cites Lumbermen's Reciprocal Ass'n v. Day, Tex.Com.App., 17 S.W.2d 1043; and Texas Emp. Ins. Ass'n v. Lee, Tex.Civ.App., 21 S.W.2d 56. These cases hold that a compensation claimant is not entitled to recover additional compensation on the sole ground of a showing of a change in condition after a compromise settlement. While we do not doubt the correctness of said decisions, they are not controlling here, unless the undisputed evidence shows that the injury of July 15, 1937 (that is, the time when plaintiff says he was saturated with oil by having it blown upon him while he was removing the tubing from an oil well and the severe skin eruptions that followed), did not constitute a separate injury, but is merely a part of the result of the injuries settled for in the compromise agreement of July 6, 1937, or merely a recurrence of the previously existing disease resulting from the burns. We think it is not conclusively so shown. We think there is evidence of a separate and distinct injury about the 15th day of July, 1937. We further think there is evidence sustaining the conclusion that the plaintiff's prior injury and resulting infection for which he had settled merely caused plaintiff to become predisposed to the injury and illness following the spraying with oil on July 15, that the prior burn and disease caused the allergy to oil, a predisposition and susceptibility to oil poisoning, which did result when plaintiff became saturated with oil about July 15. It is definitely settled that the fact that a prior disease has weakened the resistance of plaintiff and made him more susceptible to an injury does not preclude his recovery under the Workmen's Compensation Law for such injury.

The greatest difficulty we have encountered is in determining whether or not the evidence is sufficient to authorize a finding of an accidental injury within the meaning of the Workmen's Compensation Law. Vernon's Ann.Civ.St. art. 8306 et

seq. Defendant contends that an accidental injury is not shown, but that the evidence discloses plaintiff is suffering from an occupational disease.

In Barron v. Texas Emp. Ins. Ass'n, Tex.Com.App., 36 S.W.2d 464, 465, Barron had, prior to the injury which was the basis of his suit, come in contact with poisonous gas emitted from producing oil wells on the lease on which he worked and, during the months preceding the injury in question, his eyes had several times become inflamed and on one occasion he had been "almost knocked out when gauging an oil tank from the fumes arising from this oil." He had recovered from this attack. At the time of the injury made the basis of his claim for compensation he was engaged in lowering tubing into an oil well. At the beginning of this job a small amount of gas was coming from the well, but later the gas was discharged in an unusually heavy volume. As a result of this "heavy and unusual gassing" Barron was injured and he recovered compensation for the disability resulting therefrom. It was there contended that the defendant was entitled to an instructed verdict because the evidence disclosed that Barron was suffering from an occupational disease and not from an accidental injury. The court said: "A disease acquired in the usual and ordinary course of an employment, which from common experience is recognized to be incidental thereto, is an occupational disease * * *."

It was held that Barron's incapacity was due to an accidental injury and not an occupational disease, among other reasons, because the amount of gas which came from the well at the time of his injury was unusually heavy and the consequences which resulted from inhaling gas could be traced definitely to this particular gassing, "and not to the slow and gradual process of inhaling the same during the time he had been in the employment of the Atlantic Production Company. While it is true he had prior to the occasion in question inhaled this gas to some extent, yet it was diluted with a mixture of air and not in a heavy volume; while on the occasion of his injury, heavy escapes of the gas caused him to inhale an unusual amount thereof, which is shown to have resulted in positive injury to the physical structure of his body, that is, to his nasal passages, throat, and lungs."

The court further said:

"In this case it is shown plaintiff in error received an unusual and heavy gassing at a particular and definite time, the result of which was to inflict a structural injury to his physical body. The injury in the Graham Case [Aetna Life Insurance Co. v. Graham, Tex.Com.App., 284 S.W. 931] was one brought about by such a slow and gradual process that it could not be said her injury was received at any particular time. It was merely the cumulative effect of her continuous exposure to a danger necessarily incident to the performance of her duties. * * *

"A disease contracted as the direct result of unusual conditions connected with the work and not as an ordinary or reasonably to be anticipated result of pursuing the same should be considered as an accidental injury. Thus pneumonia caused by the inhalation of gas generated by an explosion has been held to be an accident. [Citing authorities.] Blindness to an employee received while using wood alcohol in his work due to excessive use during a rush period is an accident within the meaning of the Workmen's Compensation Law. [Citing authorities.]

"What is termed an accident must be something out of the ordinary, unexpected, and definitely located as to time and place. If the injury is incurred gradually in the course of the employment and because thereof, and there is no specific event or occurrence known as a starting point, it should be held to be an occupational disease and not an injury resulting from accident."

In Fidelity & Casualty Co. of New York v. Neas et al., 5 Cir., 93 F.2d 137, 138, Neas, a power company lineman, was accustomed to climbing electric light poles. He had high blood-pressure. On the occasion in question he had ascended two poles in succession and on reaching the ground staggered to his truck and slumped down in the seat. He was taken to the hospital where he died in a few hours of massive cerebral hemorrhage. The medical witnesses were in agreement that the hemorrhage was the cause of death and that it was due to the giving away of weakened arterial walls in the brain. That increase in blood pressure would result from exertion and could precipitate such a hemorrhage. It was there urged that an accident was not shown and that the evidence disclosed Neas' death was

due to an occupational disease. The court said: "The arterial injury which happened to Neas was not a willful injury, and was unexpected and not in the usual course of events, and is traced to a definite time, place and cause."

It held the evidence was sufficient to show an accidental injury within the Workmen's Compensation Law, and not an occupational disease.

In Hartford Accident & Indemnity Co. v. Jones, 5 Cir., 80 F.2d 680, 681, appellant contended the injured employee's disability was caused by an occupational disease and not an accidental injury. Jones was engaged in the business of repairing automobiles and trucks for his employer. After working on a truck for about three days, which work required the use of red gasoline, a breaking out appeared on and between his fingers. This was an unusual length of time to work on a job. Jones worked 8 hours a day and had his hands in the gasoline about half the time. The gasoline poisoned his hands resulting in his disability. Throughout his employment Jones was required to do work which caused him to place his hands in this gasoline, but it was not customary for him to have his hands in gasoline every day, nor for so long a time, as upon the particular occasion in question. Neither he nor the other employees had suffered from the use of such gasoline before. A doctor testified that Jones had acute dermatitis, developing into cancer and causing swelling, cracking and skinning of his hands. He testified he did not know whether Jones's "condition is due to a continuous exposure or to a single exposure to gasoline. A continuous use of gasoline might produce it. One severe exposure might cause it." The court held that the medical experts' inability to say whether Jones's condition resulted from one prolonged exposure or frequent repeated exposures did not prevent the jury from making a finding on that point and that the evidence was sufficient to sustain a finding of an accidental injury. The court said there was no real foundation in the evidence for a belief that Jones's acute skin condition was an occupational disease; that such condition was not the usual and ordinary result of Jones's occupation, and was not recognized in common experience to be incident to that occupation. The court further said: "The fact that Jones, at least since his injury,

seems to be peculiarly sensitive to the effects of the red gasoline does not defeat him. An injury may often accrue to one man who is in a state of weakness that would not have resulted the same way in a hardier man. If there be a real injury, the background of his peculiarities will not defeat compensation for it. * * * Although the present is not a strong case for the claimant, we think there was evidence from which it might be inferred that the inflammation of Jones' hands was due to unusual exposure to this red gasoline at a sufficiently certain time and place and in the course of his employment, and that it was not the manifestation of a disease usual in and recognized as incident to his occupation."

We think the evidence is sufficient to sustain the finding of accidental injury.

In this connection see also Employers' Liability Assurance Corp., Ltd. v. Flint, Tex.Civ.App., 14 S.W.2d 1046, writ refused; Houston Packing Co. v. Mason, Tex.Civ.App., 286 S.W. 862.

In Traders & General Ins. Co. v. Weatherford, Tex.Civ.App., 124 S.W.2d 423, 426, we considered the question whether or not an accident must be independent of and precedent to the injury. We held that "an injury * * * may be caused by an accident or in its initial stage may itself be an accident, and in the one case as well as in the other, be compensable if resulting in disability." In this connection, see also Maryland Cas. Co. v. Rogers, Tex.Civ.App., 86 S.W.2d 867, 870; International Travelers' Ass'n v. Francis, 119 Tex. 1, 23 S.W.2d 282; Bryant v. Continental Cas. Co., 107 Tex. 582, 589, 182 S.W. 673, L.R.A.1916E, 945, Ann.Cas. 1918A, 517.

Applying the principle announced in said decisions to the facts of the instant case, we think it is evident that plaintiff's disability did not result from an occupational disease. We further think the evidence is sufficient to support a finding of an accidental injury. It is true that there is evidence which, taken alone, would lead to the conclusion that one employed as Price was on July 15, 1937, would in the natural course and pursuit of his occupation expect to get oil on him. However, giving consideration to the entire record, it is evident that although such employees must of necessity come in some degree in contact with oil

and grease it was unusual for a person to be saturated with oil to the degree that plaintiff was on the occasion in question. Fidelity & Cas. Co. v. Neas, supra. We think it may be reasonably deduced from the evidence that the only necessary connection between the prior burn and skin eruption and the dermatitis with which plaintiff was suffering was that the prior trouble merely produced a sensitive skin making plaintiff more susceptible to the. oil poisoning which he received when he became saturated with oil about July 15.

 Defendant contends the undisputed evidence shows that the subsequent injury (being saturated with oil on July 15) could not have occurred except for the prior injury (burns) and that under Art. 8306, § 12c, where two injuries contribute to the same incapacity,. the employee can only recover the compensation to which the subsequent injury would have entitled him had there been no prior injury, and that, therefore, the court should have instructed a verdict for defendant. That which we have heretofore said, we think, is a sufficient answer to this proposition; that is, that the evidence was sufficient to authorize a finding that the only connection between the prior trouble and the oil saturation was to make the employee more susceptible to said injury. We are of the opinion that if the only effect of a prior injury is to make an employee more susceptible to a subsequent injury, said statute is not applicable. We think that Art. 8306, § 12c, is not shown to be applicable to the fact situation here disclosed. However, if said statute is applicable, then the duty to obtain submission of such issues was on defendant. Williamson v. Texas Ind. Ins. Co., 127 Tex. 71, 76, 90 S.W.2d 1088; Texas Emp. Ins. Ass'n v. Stephens, Tex.Civ.App., 22 S.W.2d 144, 146; Texas Ind. Ins. Co. v. Perdue, Tex.Civ.App., 64 S.W.2d 386, 388, writ refused; Petroleum Cas. Co. v. Bristow, Tex.Civ.App., 21 S.W.2d 9, 12; Nobles v. Texas Ind. Co., Tex.Com.App., 12 S.W.2d 199; Traders & Gen. Ins. Co. v. Watson, Tex.Civ.App., 131 S.W.2d 1103, 1107; Colorado & S. Ry. Co. v. Rowe, Tex.Com.App., 238 S.W. 908. It is evident the defendant has not placed itself in position to complain because of its failure to prepare the issues contemplated in Art. 8306, § 12c, and request their submission. Harris v. Thornton's Dept. Store, Tex.Civ.App., 94 S.W.2d 849, 854; Har-

ris v. Leslie, 128 Tex. 81, 96 S.W.2d 276; Gulf, C. & S. F. Ry. Co. v. Conley, 113 Tex. 472, 260 S.W. 561, 32 A.L.R. 1183. Also see Traders & Gen. Ins. Co. v. Watson, Tex.Civ.App., 131 S.W.2d 1103.

This is true despite the fact that the issues must be so stated as to place the burden of proof thereof on the claimant. Hartford Acc., etc., Co. v. Shelton, Tex. Civ.App., 119 S.W.2d 118; New Amsterdam Cas. Co. v. Rutherford, Tex.Civ.App., 26 S.W.2d 377, 381; Galveston, etc. v. Washington, 94 Tex. 510, 63 S.W. 534, 537; Art. 8306, § 12c; Rosenthal Dry Goods Co. v. Hillebrandt, Tex.Com.App., 7 S.W.2d 521, 523; 22 C.J. § 15, p. 70.

 Defendant requested the court to submit the following special issue: "Do you find from a preponderance of the evidence, if any, that the breaking out on the plaintiff, if any, is not a re-occurrence of the breaking-out, if any, with which he was afflicted immediately prior to the month of July, 1937?" We think the real question was whether or not the plaintiff's incapacity was the result of his previous injury, which was submitted in special issues 17 and 18. Further, defendant contends the court erred in failing to submit to the jury the question whether or not plaintiff's injuries were caused solely by an occupational disease and in failing to define occupational disease. What we have heretofore said, we think, sufficiently answers this contention. However, we do not agree with defendant's contention that "If it is possible to say that his [Price's] injuries did not arise from the previous burns, that then as a matter of law his injuries arose from an occupational disease." Relative to whether or not it was an issuable fact as to whether plaintiff was suffering from an occupational disease, we think the evidence does not in any wise bring this case within the tests laid down in the authorities dealing with occupational diseases heretofore cited.

Special issue No. 10 asked the jury to fix the extent of plaintiff's partial disability. The jury's answer fixed the extent of plaintiff's partial disability from June 15, 1937, to date of trial at 75 percent. In answer to issue 11, the jury found that plaintiff would suffer partial disability in the future and, in answer to 12, that such future partial disability would exist for the remainder of his life. Special issue 13 asked the jury to find the extent of

plaintiff's future partial disability. The jury answered "5 percent."

Defendant objected to issues 10 and 13 for the reason they were immaterial and could not form the basis of a judgment in that they could not serve as a basis for determining the proper rate of compensation where the disability resulted from a general, as distinguished from a specific, injury, and that the proper issue would be one inquiring the difference between the wages earned by the plaintiff "at the time of his injury and the wage earning capacity thereafter." Plaintiff's partial incapacity having resulted from a general and not a specific injury, his compensation rate is to be determined under Section 11, instead of Section 12, of Article 8306. In other words, plaintiff is entitled to 60 percent of the difference between the average weekly wages earned by him prior to his injury, and his wage earning capacity subsequent to the injury, during his period of partial incapacity within the statutory limitation of 300 weeks. Art. 8306, § 11. The jury found plaintiff's average weekly wage prior to his injury was $28. It further found that from March 15, 1937, the date of plaintiff's injury, to the date of the trial, May 27, 1939, plaintiff suffered 75 percent disability, and that thereafter he would suffer 5 percent incapacity. The finding of 75 percent incapacity was equivalent to a finding that, during said period, plaintiff's earning capacity was $7 per week. Thus $21 was the difference between plaintiff's average weekly wages prior to the injury and his earning capacity from the date of injury to the date of trial. Sixty percent of said difference ($21), that is, $12.60, was therefore, his compensation rate during said period. There is no material difference between a finding that plaintiff suffered 75 per cent disability and a finding that, during said period, his earning capacity was $7 per week. The same reasoning applies to the finding of the percentage of future disability. The jury, in effect, was so advised by the definitions and instructions given. While it may be preferable to ask the jury to find in dollars and cents the difference between the average weekly wages prior to the injury and the wage earning capacity subsequent to the injury, as suggested by defendant (or better still, to have a finding of plaintiff's average weekly wage prior to the injury and a finding of his average weekly wage earning capacity during the existence of his partial incapacity), there is no reason to believe that a different compensation rate would have resulted. The manner in which said issues were submitted has been held not to be reversible error in Traders & General Ins. Co. v. Patterson, Tex.Civ.App., 123 S.W.2d 766, 768, writ dismissed, and in Siller v. United States Fidelity & Guaranty Co., Tex.Civ.App., 93 S.W.2d 529, 530, writ dismissed. We have been unable to find any case where such manner of submission alone was held to be reversible error. In this connection, see also General Acc. Fire & Life Assur. Corp. v. Bundren, Tex.Civ.App., 274 S. W. 671, affirmed, Tex.Com.App., 283 S. W. 491; Traders & Gen. Ins. Co. v. Snow, Tex.Civ.App., 114 S.W.2d 682; New Amsterdam Cas. Co. v. Crow, Tex. Civ.App., 16 S.W.2d 560.

All of defendant's assignments of error, including those relating to the argument of counsel, have been considered and are overruled.

The judgment is affirmed.