### TRADERS & GENERAL INS. CO. v. ROBINSON.

No. 6443.

Court of Civil Appeals of Texas. Texarkana.

May 26, 1949.

Rehearing Denied June 16, 1949.

Jones & Jones, Mineola, Wynne & Wynne, Philip Brin, Longview, Dan P. Johnston, Dallas, for appellant.

Mullinax, Wells & Ball, Dallas, T. C. Chadick, Quitman, for appellee.

HALL, Justice.

This is a compensation case and arises as an appeal by appellee Robinson from an award by the Industrial Accident Board in which is asserted a claim for total incapacity to work under the Compensation Act. Vernon's Ann.Civ.St. art. 8306 et seq. Trial was to a jury and resulted in a verdict finding appellee totally incapacitated for eight weeks and 85% partially incapacitated which was permanent. Following the verdict judgment was entered by the trial court for the appellee for eight weeks total incapacity and for three hundred weeks at $20 a week for partial incapacity which was permanent.

Appellant's points 1, 2, 3 and 4, attack the answers of the jury to special issues 7, 9, 10 and 12, as being "so contrary to the weight and preponderance of the evidence as to show passion and prejudice."

Appellee was injured on the 18th day of June, 1947, on the floor of an oil derrick while working as a driller's helper in the employ of the Seaboard Drilling Company in the Quitman Oil Field in Wood County. Appellant is the insurance carrier of the Seaboard Drilling Company. Appellee alleged that while he was engaged in breaking a drill stem he "was struck by the back-up tongs on his right thigh and knocked approximately ten feet across the derrick floor, and fell on his right side, striking a chain guard. He suffered a contusion over the right side of the head and right shoulder. He felt pain in the left shoulder, lower back, right thigh and leg, which have continued to the present. From said blow and fall plaintiff suffered a fracture to the bones of his knee and leg which caused certain bone fragments to break off from said leg-bones, and has caused an atrophy of the right leg and a swelling around the right knee. Plaintiff also suffered injuries to his spine and in particular to the lumbar spine and the 12th dorsal vertebra, which has caused marked lordosis and twisting of the spine and narrowing of the interspace between the vertebra and slipping of the vertebral bodies, producing extreme pain and

suffering and loss of use of his body and body functions. Plaintiff's 12th dorsal vertebra is wedge shaped and the 5th interspace is quite narrow and there is lipping and arthritis upon the antena margin of the 3rd lumbar vertebra, and evidence of lipping arthritis forming upon the bones and joints of the right leg and knee, as well as on said vertebrae. Said arthritis did not exist in any degree before said injury." After his injury appellee was carried to a hospital in Mineola, Texas, and was treated by Dr. Moore for a period of about two weeks, after which he was discharged. It is undisputed in the record that appellee suffered an injury to one of his ear drums from shell explosion during World War I, which still causes a discharge from his ear. About 1921, appellee's tonsils were removed, and at the present time he is suffering from pyorrhea. It was stipulated that at the time of appellee's injury he was earning $70.40 per week from the Seaboard Drilling Company. In answer to special issue No. 7 the jury found that appellee's partial incapacity was permanent; to issue No. 9 that the degree of partial incapacity sustained by appellee was eighty-five per cent; to issue No. 10 that appellee's incapacity was not caused solely by any pre-existing disease; and to issue No. 12 that fifteen per cent of appellee's incapacity to labor was caused by a pre-existing disease or infection. Appellee testified that on the occasion of his injury, he, with the other members of the derrick crew, was breaking the drill stem. The tongs were fastened to the drill stem. In this operation the tongs slipped and struck appellee on the right thigh knocking him some ten feet over and against a metal chain guard. Appellee testified further that there was a cut on his right shoulder, which was sewed up at the hospital, that his knee was bruised and his back hurt. Appellee was corroborated by Dr. Schoolfield, who made at least two examinations of him with the aid of X-rays. The first examination a few months after the injury and the last one shortly before the trial. Dr. Schoolfield said that appellee's right leg at the thigh was one inch smaller than the left leg at the same point; that appellee's right knee "showed a swelling of about one-half inch." That the fifth interspace of appellee's lower lumbar vertebra was narrow and thin. When asked on cross-examination about appellee's knee and back Dr. Schoolfield testified as follows:

"Q. Now in this instance you found more bone? A. There is a little extra bone in his knee cap.

"Q. And there is extra bone on the inside of his knee cap or knee joint, is there? Is that right? A. This is the knee cap. That little bone in front.

"Q. Did you pick it out to see what it was? A. I don't need to.

"Q. Why can you say that was caused by some settlement by some calcareous substance on the bone? A. It isn't on the bone, it is separate from the bone.

"Q. Well, I am asking you what was really there? A. What is actually there in my opinion *is bone that has been torn loose.*

"Q. That is not a calcareous substance that has grown there. And has been torn loose? A. *I don't think so.*

"Q. The lipping that you found of that bone, doctor, what is there? A. You mean of the third lumbar vertebra?

"Q. Yes. A. I assume that is due to injury.

"Q. Now, was it an enlargement of that portion of the back? A. *Well, it looked to me like that it was sort of mashed down there a little bit as you might call it.*

"Q. *Caused by what? A. A tumble, a blow, a strain or something like that.*" (Italics ours.)

■ Appellant's evidence on the other hand was contradictory to that of appellee and his witness Dr. Schoolfield, and raised a sharp issue of fact, first as to the extent of appellee's injury, and second, as to whether appellee's condition was caused by a pre-existing disease. Clearly it seems to us that the evidence raised disputed issues of fact which were properly submitted to the jury and we do not think their answers indicate that the jury was moved by either prejudice or passion. Bobbitt v. Bobbitt, Tex.Civ.App., 223 S.W. 478, writ dismissed; Colored Baptist Church v. Giles, Tex. Civ.App., 219 S.W.2d 498; Greenspun v.

Greenspun, Tex.Civ.App., 194 S.W.2d 134, affirmed 145 Tex. 374, 198 S.W.2d 82. See also Greenspun v. Greenspun, Tex.Civ. App., 211 S.W.2d 977.

The finding by the jury that appellee suffered 85 per cent disability, together with a stipulation of his earnings of $70.40 per week furnished a sufficient basis for computing his average weekly wage earning capacity during the existence of such partial incapacity. Traders & General Ins. Co. v. Patterson, Tex.Civ.App., 123 S.W.2d 766, and authorities there cited. It is said in Federal Underwriters Exchange v. Price, Tex.Civ.App., 145 S.W.2d 951, 958, writ refused, no reversible error: "There is no material difference between a finding that plaintiff suffered 75 per cent disability and a finding that, during said period, his earning capacity was $7 per week. The same reasoning applies to the finding of the percentage of future disability. The jury, in effect, was so advised by the definitions and instructions given. While it may be preferable to ask the jury to find in dollars and cents the difference between the average weekly wages prior to the injury and the wage earning capacity subsequent to the injury, as suggested by defendant (or better still, to have a finding of plaintiff's average weekly wage prior to the injury and a finding of his average weekly wage earning capacity during the existence of his partial incapacity), there is no reason to believe that a different compensation rate would have resulted."

To the same effect is Scarborough v. Travelers Ins. Co., Tex.Civ.App., 189 S.W. 2d 10.

Granting, however, that the jury's findings reduced appellee's capacity as a laborer resulting from the injury of June 18, 1947, and a prior disease to seventy per cent, still appellee would be entitled to the maximum of $20 per week, for 300 weeks, as decreed by the trial court. This is a matter of calculation and is easily ascertained.

By its point 5 appellant asserts that the trial court erred in refusing to permit a cross-examination of appellee's witness, Dr. Schoolfield, "with reference to the numerous reports he had made to the Industrial Accident Board about specific instances wherein he had testified to finding identical injuries of the same general character as he claimed that plaintiff (appellee) had sustained, for the reason that such refusal deprived the jury of a most important standard in judging the credibility of this witness."

We have carefully studied the record in this case and it reflects that appellant sought to cross-examine appellee's witness Dr. Schoolfield with respect to numerous reports on injuries made by him to the Industrial Accident Board showing that claimants were suffering from back injuries, particularly the fifth interspace in the lumbar region. The trial court refused to permit cross-examination of the witness as to details of the reports. However, appellant was permitted to cross-examine the witness with respect to numerous injury cases in which he had testified for plaintiffs, namely: In Lubbock, Odessa, Abilene, Sherman, Wichita Falls, Corsicana, Tyler, Galveston, Longview, Quitman, Jefferson, Dallas, and for Jones and Jones of Marshall, Texas, in a suit against the Express Company. It is the settled law of this State that a party to a suit has the right to cross-examine an adverse witness in order to show interest, bias, or prejudice to affect his credibility, and a wide latitude is allowed in such matters. But, as said in Horton v. Houston & T. C. Ry. Co., Tex. Civ.App., 103 S.W. 467, 469, writ refused: "The extent to which such examination should be prolonged was a matter largely in the discretion of the trial court. Of course, it was not proper to inquire into the correctness of his opinion given in the cases about which he was questioned."

To the same effect is St. Louis & S. F. Ry. Co. v. Clifford, Tex.Civ.App., 148 S. W. 1163, writ refused. In our opinion there is no abuse of the trial court's discretion here in limiting the cross-examination of the witness Dr. Schoolfield. Any further cross-examination, as evidenced by the questions asked to which objection was sustained by the trial court, would have involved the details of the witness' report theretofore made in other cases to the Industrial Accident Board.

The oral deposition of the appellee was taken on February 9, 1948, and the trial of this cause was begun on September 9, 1948, and consumed some three or four days. At the close of the testimony appellant made its motion to the court for permission to withdraw its announcement of "ready for trial" and continue the case because of the failure of appellee in his deposition of February 9, 1948, to divulge the doctors who had theretofore treated him and the hospitals he had visited and in which he had received treatment. Judgment was entered by the trial court on November 12, 1948, against appellant, and on the same day its motion for a new trial was filed, which was overruled by the trial court on the 19th day of November, 1948. The record of this case is silent as to any investigation made by appellant from the close of the trial in September until the overruling of its motion for a new trial on November 19, 1948. In our opinion ample time elapsed between the close of the trial and the overruling of appellant's motion for a new trial in which appellant could have made investigation and determined whether the appellee was testifying falsely with respect to the treatment he had received from different doctors, and the different hospitals he had visited in which he had been treated, and presented such matters to the trial court before action upon its motion for a rehearing. As stated above, the record is silent as to any investigation by the appellant with respect to these matters. The motion for a new trial filed by appellant does not set up any injury to it by refusal to postpone the case. It merely states in paragraph 2: "The court erred in refusing to permit the defendant to withdraw its announcement of ready at the conclusion of the evidence."

Surely, if appellant had made an investigation of the statements of appellee on the trial as to the treatments he had received from different physicians and the hospitals he had visited, and found them false it could have been brought forward in their motion for new trial in order to give the trial court an opportunity to pass upon the matter. Furthermore, the granting or refusing a postponement, under circumstances as here, is largely within the discretion of the trial court and unless an abuse of such discretion is shown, a reversal is not warranted. From the facts and circumstances surrounding the trial court's action in refusing to permit appellant to withdraw its announcement of "ready" and to continue the case, we have concluded was within the sound discretion of the trial court and that no injury to appellant is shown in this record.

All other points advanced by appellant have been examined, they are without merit, and are overruled.

The judgment of the trial court is affirmed.