**TRADERS & GENERAL INS. CO. v. PATTERSON.**

No. 5228.

Court of Civil Appeals of Texas. Texarkana.

Nov. 17, 1938.

Rehearing Denied Dec. 1, 1938.

Lightfoot, Robertson & Gano, of Fort Worth, and Collins & Collins, of Lufkin, for appellant.

Jones & Jones, of Marshall, for appellee.

JOHNSON, Chief Justice.

This suit was filed by O. K. Patterson against Traders & General Insurance Company to set aside an award of the Industrial Accident Board, and to recover compensation for incapacity sustained April 17, 1935, as the result of injuries to his body received in the course of his employment with R. H. Dearing & Son, who carried compensation insurance with defendant.

Defendant answered by general demurrer, special exceptions, and general denial, and specially pleaded: "For further answer herein, if any be necessary, defendant says that each and every week for thirty-three (33) consecutive weeks from and after the date of the alleged injury to the plaintiff, the defendant paid to the plaintiff, in lawful money of the United States, the sum of $15.58, which said amounts were accepted by the plaintiff in full, final and complete settlement, satisfaction and discharge of the defendant's liability, if any, to the plaintiff for compensation for total disability for said period of thirty-three weeks. Defendant further says that at the expiration of said thirty-three weeks, the plaintiff had fully recovered from the effects of his injury, if any, and suffered no incapacity to any extent or degree thereafter."

Trial to a jury upon special issues resulted in judgment entered May 25, 1936, awarding plaintiff compensation for thirty weeks' total incapacity from April 17, 1935, at the rate of $20 per week, totalling $600, credited with $510.35 on account of payments theretofore made by defendant to plaintiff, leaving a balance unpaid of $85.65 for the period of his total incapacity. The judgment further awarded plaintiff compensation for 50% partial incapacity at the rate of $10 per week for a period of 300 weeks following termination of his total incapacity. From an order overruling its motion for new trial defendant has appealed. The parties will be referred to as aligned in the trial court, plaintiff and defendant.

■ Defendant's first and second propositions present the contentions that immediately after the injury plaintiff and defendant agreed upon a compensation rate of $15.58 per week for the period of total incapacity sustained by plaintiff; that in accordance with said agreement defendant had paid and plaintiff had received such weekly payments aggregating $510.35, in full settlement, and discharge of defendant's liability for the total incapacity sustained by the plaintiff; that by reason of such facts plaintiff was precluded from recovering compensation for the period of his total incapacity at a rate in excess of said agreed rate of $15.58 per week; and that the trial court therefore erred in awarding plaintiff compensation for the period of his total incapacity at the rate of $20 per week. The proposition is overruled. The facts found by the jury show that the plaintiff was legally entitled to a compensation rate of $20 per week, when computed under the provisions of the Workmen's Compensation Law, Rev.St. 1925, arts. 8306 et seq. The only evidence bearing upon the contention that plaintiff and defendant entered into an agreement fixing plaintiff's weekly compensation rate for total disability at $15.58 is the testimony of plaintiff alone, hereinbelow set out. There was no jury finding as to the alleged agreement and none requested. That part of plaintiff's testimony upon

which defendant bases its contention that there was an agreement between plaintiff and defendant whereby it was agreed that plaintiff's compensation rate for the period of his total incapacity should be $15.58 and that plaintiff had accepted such payments in full and complete satisfaction of defendant's liability, is, stated in narrative form, as follows: "After I was injured Traders & General Insurance Company paid me compensation; they would send maybe one check for two or three weeks and then maybe they would linger along and pay it once a week; each of these installments were for $15.58; they paid me thirty installments; I don't remember the date when they stopped paying me; I don't even remember the month. It was in the fall of 1935, some time during that fall."

On cross examination he testified: "Shortly after I filed my claim for compensation the insurance company began paying me at the rate of $15.58 weekly but they did not continue to pay me for a period of thirty-three weeks but they did pay me for a period of thirty weeks; they paid me $15.58 a week for thirty weeks, that would be about $467.00 I think it is, or something around that; they paid me for thirty weeks, that would figure $467.-40 at $15.58 a week. I don't remember how long those payments continued from the date of my injury and disremember when they stopped compensation. It would be about seven and a half months from the time of my injury, thirty weeks is seven months and two weeks. I went to my attorney and asked for information in June, I think, after I was injured."

■ The above testimony merely shows that after plaintiff filed his claim for compensation defendant paid him for thirty weeks at $15.58 per week. The judgment recites that counsel had agreed in open court that plaintiff had been paid $510.35, which accounts for the action of the court in giving defendant credit for that amount instead of $467.40 as shown by the testimony. Plaintiff did not testify that there was an agreement between him and defendant fixing his compensation rate at $15.58, nor does the testimony show that such weekly payments were made or received with the intention or understanding on the part of either party that same were made in full settlement and discharge of defendant's liability for plaintiff's total disability. The evidence does not show, nor is

it contended, that the alleged agreement was a compromise settlement made between the parties and approved by the Board under the provisions of Section 12 of Article 8307. Employers' Indemnity Corp. v. Woods, Tex.Com.App., 243 S.W. 1085; Woolsey v. Panhandle Refining Co., Tex. Sup., 116 S.W.2d 675. We do not think the fact alone that defendant had paid, and plaintiff had received, thirty weekly payments of $15.58 each would constitute a bar of plaintiff's right to establish and recover (credited with such payments) the amount of compensation fixed by the provisions of the Workmen's Compensation Law. Appellant contends that the following authorities will support a holding contrary to our decision: Fidelity Union Casualty Co. v. Dapperman, Tex.Civ.App., 47 S.W.2d 408; Commercial Standard Ins. Co. v. De Hart, Tex.Civ.App., 47 S.W.2d 898; Bankers' Lloyds v. Seymour, Tex.Civ.App., 49 S.W. 2d 508; Texas Employers' Ins. Ass'n v. Beckworth, Tex.Civ.App., 42 S.W.2d 827; Globe Indemnity Co. v. McClurg, Tex.Civ. App., 38 S.W.2d 125; Southern Surety Co. v. Eppler, Tex.Civ.App., 26 S.W.2d 697; Texas Employers' Ins. Ass'n v. Bateman, Tex.Civ.App., 252 S.W. 339. The above cases in effect hold that, the absence of evidence showing a different rate, proof that defendant has paid plaintiff compensation at a certain weekly rate is sufficient to support a judgment based upon that rate. But they do not authorize a holding that the fact alone of payment by the insurance company and receipt by the disabled employee of thirty weekly payments in a less amount than that to which he is entitled under the law will bar the employee from establishing and being awarded his lawful wage rate.

■ Defendant's third proposition is to the effect that the judgment awarding plaintiff compensation for partial incapacity is without sufficient basis of fact, in the particular that there was no "jury finding" as to what was plaintiff's "average weekly wage earning capacity during the existence of such partial incapacity," according to the terms of Section 11, Article 8306; and that the finding of the jury that "the extent or degree of plaintiff's partial incapacity is 50%" was immaterial and formed no basis in fact for the judgment. Appellant cites Lloyds Casualty Co. v. Meredith, Tex.Civ.App., 63 S.W.2d 1051; Traders & General Ins. Co. v. Hicks, Tex. Civ.App., 94 S.W.2d 824. The partial inca-

pacity for which plaintiff sought compensation in this case was the result of an injury to his body, denominated partial general incapacity and compensable under the provisions of Section 11, Article 8306, as distinguishable from the specific injuries enumerated in Section 12, Article 8306. Section 11 of Article 8306 reads as follows: "While the incapacity for work resulting from the injury is partial, the association shall pay the injured employe a weekly compensation equal to sixty per cent of the difference between his average weekly wages before the injury and his average weekly wage earning capacity during the existence of such partial incapacity, but in no case more than $20.00 per week. The period covered by such compensation shall be in no case greater than three hundred weeks; provided that in no case shall the period of compensation for total and partial incapacity exceed four hundred and one weeks from the date of injury."

Plaintiff's average weekly wage rate before the injury was computed under Subsections 2 and 5 of Section 1, Article 8309, and found to be $34.61. In response to issues, accompanied by proper definitions, the jury found that plaintiff had sustained total incapacity to work for thirty weeks; that he had sustained partial incapacity for work to the extent of 50%; and that such partial incapacity was permanent. The evidence in this case shows that plaintiff was an oil field workman qualified only to do physical labor, hence his "wage earning capacity" was dependent upon his "capacity for work" and the injury to his body which reduced his capacity for work likewise reduced his wage earning capacity. Accompanying the issue inquiring as to whether plaintiff had sustained partial incapacity for work the court instructed the jury on the meaning of that term as follows: "In connection with the foregoing issue you are instructed that by the term 'partial incapacity' is meant that an employee by reason of an injury is only able to perform part of the usual tasks of a workman, but is nevertheless, able to procure and retain employment reasonably suited to his physical condition and ability to work, or is only able to perform labor of a less remunerative class than he performed prior to his injury, whereby he suffers a depreciation or a reduction in his earning capacity."

The above instructions make it clear that the character of "partial incapacity" inquired about was that which reduced plaintiff's wage earning capacity. Therefore the finding of the jury that plaintiff had sustained such character of partial incapacity "to the extent of 50%" was sufficient basis for computing "his average weekly wage earning capacity during the existence of such partial capacity" at $17.30½, and that the weekly compensation rate to which he was entitled was $10.38, which totals $114 more than allowed by the judgment. Our decision that judgment is not without sufficient basis of facts to support it in the particular attacked is supported by the following authorities: Siller v. United States Fidelity and Guaranty Co., Tex.Civ. App., 93 S.W.2d 529; Fidelity & Casualty Co. of New York v. Branton, Tex.Civ. App., 70 S.W.2d 780; Petroleum Casualty Co. v. Lewis, Tex.Civ.App., 63 S.W.2d 1066; New Amsterdam Casualty Co. v. Crow, Tex.Civ.App., 16 S.W.2d 560.

Defendant's propositions 4, 5, and 6, in substance, assert that where the impracticability to compute plaintiff's average weekly wage rate under Subsection 1, Section 1, Article 8309, is shown only by the uncontradicted, uncorroborated testimony of plaintiff, a "jury finding" affirming such fact is essentially required before the court may resort to Subsection 2 in submitting the issue establishing such average weekly wage rate. Plaintiff pleaded facts sufficient to authorize establishment of his average weekly wage rate under either Subsections 1, 2, or 3, of Section 1, Article 8309. The uncontradicted, uncorroborated testimony of plaintiff showed that he had not worked in the particular class of employment in which he was working at the time of his injury substantially the whole of the immediately preceding year, and that it was impracticable to establish his average weekly wage rate under Subsection 1. His testimony was not clouded by circumstances casting any suspicion upon it. By other testimony he showed that his average weekly wage rate could be established under Subsection 2, and the court submitted the issue under Subsection 2. No contention is made that injury resulted to defendant from the action of the court in failing to procure a "jury finding" showing that it was impracticable to establish plaintiff's average weekly wage rate under Subsection 1 before submitting the issue under Subsection 2. Appellant cites American Employers' Ins. Co. v. Singleton, Tex.Com.App., 24 S.

W.2d 26, and a number of authorities following the rule declared in that case, reading [page 27]: "* * * Under the express provisions of section 5 of article 8307, R.C.S. of Texas 1925, the burden of proof is on Mrs. Singleton, as a party claiming compensation, to offer legal evidence establishing an average weekly wage for the deceased under one of the three subsections of the statute above quoted [Art. 8309]. Furthermore, under the statute the burden is on the claimant to show by competent evidence that it is impracticable to compute the average weekly wage under either subsections 1 or 2 before subsection 3 can be resorted to. Likewise, the burden is on the claimant to show that compensation cannot be computed under subsection 1 before subsection 2 is resorted to."

Appellant also cites Mills v. Mills, Tex. Com.App., 228 S.W. 919, reading [page 920]: "It is settled law in Texas that it matters not how positive and uncontradicted the testimony of an interested party may be, the question of his credibility must be submitted to the jury."

We think the rule declared in the Mills Case has application to ultimate issues, or the court's authority to instruct a verdict based upon the uncontradicted, uncorroborated testimony of an interested party. Simmonds v. St. Louis, B. & M. Ry. Co., 127 Tex. 23, 91 S.W.2d 332; City Investment & Loan Co. v. Wichita Hdw. Co., 127 Tex. 44, 91 S.W.2d 683. Expressed in other words, we do not think the rule means to require that all evidentiary matters shown by the uncontradicted, uncorroborated testimony of an interested party must be affirmed by a jury finding before proceeding to submission of the ultimate issue. The question as to which one of the three subdivisions of the statute plaintiff's average weekly wage rate shall be established under is not the ultimate issue. The ultimate issue is the establishment by plaintiff of his average weekly wage rate. It must be established under one of the three subdivisions, and he must show that it is impracticable to establish it under Subsection 1 before the issue may be submitted under Subsection 2; likewise he must show that it can not be established under Subsection 2 before the issue may be submitted under Subsection 3. But we do not think, in the circumstances here shown, that the court's action in submitting the issue under Subsection 2 constitutes as

a matter of law reversible error. New Amsterdam Casualty Co. v. Merrifield, Tex. Civ.App., 74 S.W.2d 185; Federal Underwriters Exchange v. Stewart, Tex.Civ.App., 109 S.W.2d 1031.

Defendant's 7th proposition contends that the court erred in submitting special issue No. 2, reading: "What period of time, if any, do you find from a preponderance of the evidence that the total incapacity to labor, if any, to plaintiff, O. K. Patterson, has continued or will continue after April 10, 1935?"

The contention is that the issue assumes that plaintiff had sustained total incapacity. No issue was submitted inquiring whether plaintiff had suffered total incapacity. But such fact was established by uncontradicted evidence. Defendant's pleadings above copied in this opinion may reasonably be construed as an admission that plaintiff had sustained total disability. It is not error for the court in framing an issue to assume the existence of facts established by uncontradicted evidence or by admission. In other words, the rule is that only controverted questions of fact raised by the pleadings and the evidence in the case are to be submitted. 41 Tex.Jur. p. 1027, Sec. 228.

Defendant's 8th proposition asserts that the court erred in submitting special issue No. 3 in the following words: "Do you find from a preponderance of the evidence that the injuries, if any, received by the plaintiff, O. K. Patterson, on April 10, 1935, resulted or will result in partial incapacity to plaintiff, O. K. Patterson?" Findings heretofore expressed in the course of this opinion render it unnecessary to state but one of the several objections directed to this issue. That objection is that the issue is duplicitous in that it inquires whether plaintiff's injuries "resulted or will result" in partial incapacity. We do not think the issue is subject to the objection of being duplicitous.

Defendant's proposition No. 9 is to the effect that the court erred in the order of submitting the issues eliciting the facts upon which to compute compensation for the alleged partial incapacity sustained by plaintiff. The order of submission of the issues inquired (1) whether plaintiff sustained partial incapacity; (2) its duration, (a) whether permanent, and if not (b) what period of time; (3) the percentage of such partial incapacity. The

jury found (1) that plaintiff had sustained partial incapacity; (2) that such partial incapacity was permanent; and (3) that the degree or extent of such partial incapacity was 50%. It is contended that the court in submitting such issues should have placed the issue inquiring as to the "percentage" of partial incapacity before or preceding the issue inquiring as to the "duration" of such partial incapacity. We do not think that the trial court is so restricted in the order of submitting said issues.

We have reviewed the remaining propositions of defendant and they are respectfully overruled.

The judgment of the trial court is affirmed.