## TRADERS & GENERAL INS. CO. v. HEATH.

### No. 11778.

Court of Civil Appeals of Texas. Galveston.
June 6, 1946.

On Motion for Rehearing Oct. 10, 1946.

Rehearing Denied Oct. 31, 1946.

Sewall Myer, Sam Holliday and Al Crystal, all of Houston, Lightfoot & Robertson

and Dan P. Johnston, both of Dallas, for appellant.

W. A. Combs and Combs & Dixie, all of Houston, for appellee.

CODY, Justice.

This is a workmen's compensation case. The jury found that the employee suffered an injury which totally and permanently disabled him, and the award was reduced to a lump sum, amounting to $7,020. · The jury found against the defensive issue that the employee sustained the injury while in an intoxicated state. The insurance company, hereafter called appellant, sharply contests the findings that the employee's incapacity was total and permanent.

Said award for total incapacity is based upon the jury's answers to special issues Nos. 4, 5 and 7. By its answers to said special issues, the jury found: (4) that the total incapacity which appellee suffered on June 11, 1944, was permanent; (5) that it was not temporary; and (7) that it was not partial. Appellant attacks such findings as not being supported by the evidence, principally on the ground that it was undisputed that appellee was regularly employed for some nine months after his injury, and before trial, during which he earned $2,134.21. Indeed, 11 of the first 12 of the 20 points, upon which appellant predicates its appeal, present different aspects of appellant's complaint on this score. Appellant's points 13 to 20, inclusive are set out herein following our discussion of the points 1 to 12, inclusive.

The substance of appellee's evidence in support of issues 4, 5 and 7, is:

That, while driving a truck for Brown Express, Inc., on June 11, 1944, appellee fell asleep, and the truck left the road, and he received a severe concussion or contusion of the brain. That he did not recover consciousness until the second day after the accident, when he found himself in a hospital. That he remained there under treatment by appellant's doctors until the following July 7, when they permitted him to go home. That said doctors released him for work on August 27, 1944. That, relying upon the advice of said doctors, he asked his employer for light work, but his employer refused to take him back. That he received no compensation from appellant so was compelled to seek employment. That he got a light job with Rettig Ice Cream Company, but found that it required a sense of balance, and involved the exercise of memory, and his had been impaired as a result of the accident, so he had to quit. That he obtained light work from the Brown Shipyards, but found that he would get dizzy, and his head would hurt him. And every night when he returned home from work, as soon as he had a bite to eat he had to go to bed. That he was laid off by the Brown Shipyards and stayed about home for four or five weeks until he obtained "dock work" from the Red Ball Motor Freight Company. But he found that he couldn't do manual work, which was the only sort of work that he knew how to do.

Three doctors testified on appellee's behalf. In substance they testified that appellee was unable to work. And this testimony was given in light of the knowledge on their part of appellee's work record after the accident. Dr. Brumby testified that his diagnosis of appellee's condition at the time of the trial was that it is a slow inter-cranial hemorrhage occurring in the pre-frontal or solid area of the brain, and such condition may "lay" free of symptoms for months or even years with little pressure on centers. But that such condition ultimately causes symptoms of epilepsy after a few years time, and he thought appellee's life expectancy was shortened. He thought appellee was not capable of doing manual work, and if he persisted in working the brain damage would be aggravated. The other two doctors who testified on appellee's behalf were also of the opinion that he was incapable of doing manual labor, and that to do so would aggravate his condition; and that he would not improve in the future.

Appellant points out that before appellee sought employment he consulted the aforesaid Dr. Brumby, a physician of his own choice, and that it was with Dr. Brumby's knowledge that appellee went to work. In this connection it is to be noted that Dr. Brumby instructed appellee to report to him weekly. Appellant further notes that

appellee, prior to going to work at Brown Shipyards, signed cards stating that he was able to work, and was examined by the doctor there in charge. That between September 5, 1944, and June 23, 1945, when he stopped working, appellee earned $2,134.-21; that his wage was 75¢ an hour until January 15, 1945, and thereafter was 94¢ an hour. Appellant also notes that appellee worked until about three weeks before his case was set for trial. Appellant's doctors, contrary to appellee's doctors, thought appellee had recovered and that he could work.

■ The extent and duration of the incapacity suffered by appellee on June 11, 1944, were fact questions to be determined by the jury. Of course it appeared as a matter of law that, during the two or three days which appellee remained unconscious, his incapacity to work was total. Appellee's testimony minimized the amount of work which he actually did during the nine months for which he received remuneration. According to his testimony he was only able to go through the motion of working. According to his expert medical testimony, he was totally incapacitated, from a medical viewpoint, to work, and this incapacity began on June 11, 1944, and the condition responsible for such incapacity would not get better, but would get worse. Apparently his physicians could not tell until after he had worked for some time that, from a medical viewpoint, his incapacity to work was total and had been so from June 11, 1944, and would continue so permanently. The law contemplates that in the determination of issues of the extent and duration of the incapacity suffered by an employee the jury may consider medical expert testimony. And it is now well settled that the mere fact a workman worked and earned money after sustaining an injury is not conclusive on the issue of his capacity to work, but is evidentiary only, to be considered along with the other evidence. Davies v. Texas Emp. Ins. Ass'n, Tex.Com.App., 29 S.W. 2d 987; Traders & General Ins. Co. v. Collins, Tex.Civ.App., 179 S.W.2d 525; Lott v. American Surety Co., Tex.Civ.App., 140 S.W.2d 928; 45 Tex.Jur., 588, par. 161. The evidence here was certainly sufficient to have justified the jury in concluding that appellee was malingering. But under the cited holdings the findings of the jury on the issues in question cannot be set aside merely because of the evidence that appellee worked for nine months during the period between his injury and the trial.

■ Appellant's fifth point is directed against the form of special issue No. 7, which reads: "Do you find from a preponderance of the evidence that plaintiff, G. E. Heath, *has* or *will* suffer partial incapacity to work as a result of the injury, if any, sustained by him on or about June 11, 1944?" (Emphasis supplied.) Whether same is duplicitous or not, it does not present reversible error, and falls within the ruling made in Traders & General Ins. Co. v. Carlile, 138 Tex. 523, 161 S.W.2d 484; Southern Underwriters v. Boswell, 138 Tex. 255, 158 S.W.2d 280, 282. The form of the special issue is practically identical with the form passed on in the cited cases, and we assume was copied therefrom. We overrule appellant's points 1 to 12, inclusive.

■ Appellant's 13th point complains of the court instructing the jury, over its objection, not to consider anything that had not been placed in evidence. The gist of appellant's objection that such instruction would cause the jury not to take into consideration those matters within their knowledge which are within the common knowledge of mankind. It is clear that the court by the instruction was telling the jury not to consider particular matters resting in their private knowledge, but to confine their consideration to the evidence received in open court. It is safe to conclude that the instruction was not misunderstood.

■ By its 14th point appellant complains of the definition of "partial incapacity" submitted to the jury upon grounds which we have considered and find not to be meritorious. While the definition in question is more verbose than the one recently approved by us in Texas Employers Ins. Ass'n, v. Mallard, Tex.Civ.App., 192 S.W.2d 302, we fail to find that it differs in any material respect therefrom.

**134**

■ By its 15th point appellant complains that the court did not give the following instruction to the jury: "The workmen's compensation law is designed to pay an injured person compensation for 'loss of earnings' for incapacity due to work, due to an accident, while in an injured condition." By its 16th point appellant complains of the court's refusal to give the following instruction "Loss of earnings means loss of capacity to earn money while in an injured condition." We fail to see the propriety of the definitions. They seem to be general instructions, particularly the first. We overrule the points.

Appellant's 17th point is "The court erred in defining 'permanent incapacity' as meaning a person disabled either wholly or partially, to ever do his work as he did before the alleged injury."

■ The definition in question reads: "By the term 'permanent incapacity' as used in this charge is meant that a person is permanently disabled, either wholly or partially, *and will never again be able to do his work as he did before the alleged injury.*" The portion of the definition to which appellant objected is that to which we have supplied emphasis. And the ground of the objection is that "an employee might be partially incapacitated to do the full work that he did before he was injured, but if he could nevertheless do sufficient work so that he earned as much money and could earn as much money in the same work or in the same class of work as he did before the accident in question, there would be no incapacity within the meaning of the Workmen's Compensation Law of the State of Texas. Consequently, such definition of permanent incapacity places a greater burden on the defendant than the law authorizes or justifies."

The objection is hypothetical, and without passing on whether it has any merit in the abstract, we fail to see how it could have placed any greater burden on defendant here than is authorized by law, and we overrule the point.

Appellant's point 18 is that there was not sufficient evidence upon which to base a wage rate under sections 1, 2, or 3 of Article 8309. Since we have concluded

this point must be sustained, no purpose will be served in extending this opinion by setting out points 19 and 20, though we have considered these and find them to be without merit.

Special Issue No. 13, and the answer thereto were as follows: "Do you find from a preponderance of the evidence that plaintiff, G. E. Heath, did not work substantially the whole of the year immediately preceding June 11, 1944, in the same employment in which he was working on June 11, 1944, whether for the same employer or not? Answer 'He did not work substantially the whole of such year' or 'no'. To which the jury answered 'No'."

■ Appellee pled facts sufficient to authorize establishment of his average weekly wage rate under either subsections 1, 2 or 3 of Section 1 of Article 8309. Special Issue No. 13 was submitted to get a jury finding on whether the facts were sufficient to authorize the establishment of his wage rate under Subsection 1. Under the undisputed evidence subsection 1 does not apply. This being true it would have been competent for the court not to have submitted special issue 13. Traders & General Ins. Co. v. Patterson, Tex.Civ.App., 123 S.W.2d 766. It seems probable that the jury became confused by the negative form of the submission, and answered the issue "No", apparently not believing that a double negative constituted an affirmative. Appellant itself in another connection insists that there was no evidence to support such answer. The court disregarded the jury's answer, and rendered judgment as though the jury had answered "He did not work substantially the whole of such year."

No motion was made by appellee under Rule 301, Texas Rules of Civil Procedure, to disregard said answer. We have been in some doubt whether, where it seems indicated that the jury probably misunderstood the issue, or their answer thereto, and where it seems that the court disregarded the answer after an argument by counsel thereon, whether a formal motion is required under the rule.

■ However, Rule 301 is explicit. It provides: "The judgment of the court shall

conform to the * * * verdict * * *. Provided, that upon motion and reasonable notice the court may render judgment non obstante verdicto if a directed verdict would have been proper, and provided further that the court may, upon like motion and notice, disregard any Special Issue Jury Finding that has no support in the evidence. * * *" It appears that the prescribed motion upon reasonable notice is jurisdictional to the exercise of the power by the court to disregard a jury finding. It was improper to render judgment upon special issues Nos. 14 and 15 in the face of the finding in response to special issue 13. American Employers Ins. Co. v. Singleton, Tex.Com.App., 24 S.W.2d 26. And the judgment must therefore be reversed and the cause remanded for a new trial. It will be so ordered.

Reversed and remanded.

### On Appellee's Motion for Rehearing.

■ We have concluded that we erred in sustaining appellant's point 18. Appellee has brought up the motion in response to which the judgment was entered. The motion requests the court to enter the judgment in the form of the judgment attached to said motion, and it is made to appear that appellant duly received and read the motion and the form of judgment so requested to be entered. The form of the judgment upon its face clearly indicated that the answer of the jury to special issue No. 13 was eliminated therefrom, and the motion was tantamount to moving the court to disregard the jury finding thereon. The record discloses that appellant understood that appellee was moving the court to disregard the jury finding on said issue. After mature deliberation we believe it error to hold that the court's jurisdiction to disregard said jury issue was not invoked. It in fact exercised such jurisdiction, and appellant made no objection to the form in which such jurisdiction was invoked. We therefore grant appellee's motion for rehearing.

In our original opinion we held that appellant's points 19 and 20 were without merit, but did not set them forth because we sustained point 18.

Appellant's point 19 reads: The court erred in entering judgment for $20 per week for 401 weeks, because there was no sufficient legal evidence to support the answer of the jury to issues Nos. 14 and 15.

In answer to special issues Nos. 14 and 15, the jury found, upon what we consider sufficient evidence, that another employee of the same class as appellee worked substantially the whole of the year and that such employee's average daily wage was $9.

Appellant's point 20 reads: The court erred in submitting Issue No. 13, because there was no sufficient legal evidence to support a finding thereon. We have sufficiently indicated our views on the submission of Special Issue No. 13, and of the court's action in disregarding the jury's answer thereto.

Appellee's motion for rehearing is granted, our former judgment set aside, and the trial court's judgment is now affirmed.

Rehearing granted, former judgment set aside, and judgment affirmed.