ASSOCIATED INDEMNITY CORPORATION v. POTTS.

No. 11935.

Circuit Court of Appeals, Fifth Circuit.

Dec. 9, 1947.

---

R. A. Wilson, of Amarillo, Tex., for appellant.

Walter R. Allen, of Borger, Tex., for appellee.

Before HUTCHESON, WALLER, and LEE, Circuit Judges.

LEE, Circuit Judge.

Appellee, as plaintiff below sued under the Texas statute to recover compensation benefits for injuries resulting from an accident alleged to have occurred while he was engaged in the course of his employment as an employee of the Cochran Construction Company. The Cochran Construction Company was a subscriber to the workmen's compensation insurance law of Texas and carried its insurance with appellant.

The suit was filed in the State Court and removed to the federal court on the ground of diversity of citizenship. The defendant in answer denied the material allegations and pleaded the affirmative defense that the partial and temporary, as opposed to total and permanent, disability was caused by a disease from which the plaintiff was suffering. The case was submitted to the jury on a general charge coupled with special issues. The jury found that the plaintiff had sustained personal injuries in the course of his employment which resulted in 7 weeks of total incapacity, followed by 300 weeks of 35% incapacity. Upon this verdict, the court rendered judgment in favor of appellee, allowing him a recovery of $20 a week for 7 weeks and $8.50 a week for 300 weeks. From this judgment, appellant prosecuted this appeal.

According to the plaintiff's testimony, he was employed in June 1945 by the Cochran Construction Company at the Phillips Plains Plant near Borger, in Hutchinson County, Texas. On the 16th of June, under the direction of his foreman, he was helping a welder cut flanges. His particular task was to turn the heavy pipe off the

end of which flanges were being cut. In turning the pipe, he used as a prize a one-inch pipe, some six inches long. He had difficulty turning the pipe and stooped to get a firm hold upon it; as he came up, he felt something on his left side tear as if he had been hit. The pain was of short duration and he made no complaint at the time. The next day the pain recurred and lasted for some weeks. During that time he was treated by Dr. Pittman, an osteopathic physician; when Pittman left on vacation, he went at the suggestion of the insurance adjuster to Dr. Hamra, receiving from him tablets and shots. Some seven weeks after the accident, he returned to his old job but worked only two days and was laid off. Thereafter he was employed by one G. C. Laman and worked for him for four weeks; then he was employed by the Manhattan Construction Company, for whom he was working at the time of the trial. Prior to and at the time of the accident, he worked 6 days a week, 9 hours a day, at 75¢ an hour. After the accident, he worked a like number of days a week and a like number of hours a day, at 70¢ an hour. He did the same type of work after the accident as before, but he testified that at no time did he feel like working, and he was not able to work but worked under compulsion of circumstances. A Dr. Head testifying in plaintiff's behalf stated that there was nothing abnormal in plaintiff's organs; that X-ray pictures showed that he had a fracture of the spinous process of the fifth lumbar vertebra, and revealed a separation between the sacrum and the spinous processes, evidencing that the process had pulled away from the bone. He further testified that this condition could have been the result of the injury; that it was a permanent condition; and that he did not see how the plaintiff could do justice in his work to himself or to his employer. There was considerable testimony in behalf of the defendant-appellant by fellow workmen to the effect that they had not heard plaintiff complain and that the labor he performed, manual in character, was entirely satisfactory. Several physicians who had treated or examined plaintiff testified that there was nothing wrong with his back or spinous processes and that the X-ray pictures showed his condition to be normal except that he possibly was suffering from a diseased kidney. It was developed that Dr. Head, who testified in behalf of the plaintiff, was an eye, ear, nose, and throat specialist and had been for fifteen to eighteen years; that he did not own an X-ray machine, nor had he in the last ten years taken an X-ray picture; and that the X-ray picture on which his testimony was based was taken by a technician working in other laboratories. Although his testimony was considerably weakened by these damaging admissions which were wrung from him, the case after all was one for the jury, and his testimony, coupled with that of the plaintiff, was sufficient to support the jury's verdict.

The appellant finds fault with the general charge [1] of the court below and the

[1] The material part of the court's charge is as follows:

"Without objection, there has been raised here the question of plaintiff's working pretty well since the injury without being able to, because he had to do it. It is shown here, in other words, that comparatively a short time after the injury on the 16th day of June, 1945, the plaintiff had been working on his regular work, and it may be that the evidence shows that his pay after his injury was just about what it was before. That, of itself, does not constitute a defense. The law on it in Texas is as follows:

" 'The fact that an injured employee resumes work after injury, but only under the whip of necessity, does not necessarily preclude a finding of total and permanent disability. The latter issue remains, nevertheless, one of fact to be passed on by the jury.'

"It follows necessarily that working for such reason would not bar recovery for total and temporary, or total and permanent disability. In other words, gentlemen, you must keep in mind that suits for compensation under this Act, are suits for loss of earning capacity, and are not suits for loss of earnings. What a workman may or may not earn subsequent to an alleged injury may be considered by you, nevertheless, along with the other circumstances in the case, as bearing upon the issue as to his earning capacity, or his loss of earning capacity.

special issues submitted, and with the refusal of the court below to submit to the jury its requested special issues. Specifically, the appellant urges that the court erred: (1) In view of the abundant evidence with respect to plaintiff's wage earnings after the date of the alleged accident, in submitting to the jury the percentage of any partial incapacity, and in refusing to submit to the jury appellant's special issues with respect to the difference between the plaintiff's average weekly wage at the time of the accident and his wage-earning capacity after the accident; (2) in refusing to submit to the jury its special issue inquiring whether the incapacity attributable to the actual injury sued on had terminated, and, if so, when; (3) in allowing a weekly recovery of $8.50 for partial incapacity, when the evidence supported a recovery at most of $8.18 a week.

We find no fault with the court's charge or with the special issues submitted to the jury. In its charge the court, following the statute, said: "Where incapacity to work resulting from the injury is partial, the association shall pay the injured employee weekly compensation of sixty per cent of the difference between the average weekly wages before the injury, and the average weekly wage earning capacity during the existence of such partial incapacity, but in no case more than twenty dollars per week. The period covered by such compensation shall not be in any case greater than 300 weeks." This in substance is the language of Section 11 of Article 8306, Revised Civil Statutes of Texas 1925, which all parties to the suit admit is the governing statute.

██ The special issue to which appellant most objects is special issue No. 4.

*     *     *     *     *     *

" 'Incapacity to work,' as that term is used in this charge, means lack of capacity, or lack of ability to perform work, as a natural result of the injury received in the course of the employee's employment.

"Under the Workman's Compensation Act of Texas [Vernon's Ann.Civ.St.Tex. art. 8306 et seq.], there are kinds of incapacity to work, namely, total incapacity and partial incapacity. Total incapacity may be either total [sic] or temporary. Likewise, partial incapacity may be permanent or temporary.

" 'Total incapacity' to work, as that term is used in this charge, whether temporary or permanent, means an incapacity to work, which disqualifies the employee to perform the usual tasks of a workman in a way to procure and retain employment. It is not what he does or his profession that is the guide, the test is the ordinary task of a workman.

" 'Partial incapacity' to work, as that term is used in this charge, whether temporary or permanent, means any capacity to work, less than total.

"The term 'permanent,' as used in this charge means for the lifetime of the injured employee.

"As I said, if you decide to render for the plaintiff some instructions should be had as to how you would arrive at that verdict. The first thing, it is based on sixty per cent of his average weekly wage. How you get at it; the statute provides that where the incapacity to work resulting from the injury is total, the Association shall pay the injured employee weekly compensation equal to sixty per cent of his average weekly wages, but not more than $20.00, regardless of what they are, and not less than $7.00. That in no case shall the period covered by the compensation be greater than 401 weeks from the date of the injury. In other words, compensation, if any allowed, will not continue for a life of the person, but only continue for a maximum of 401 weeks. You get at the average annual wage and divide that by fifty-two weeks, and take sixty per cent of that, but it cannot be more than $20.00, but it can run below twenty.

"The statute provides as to partial incapacity as follows: That where incapacity to work resulting from the injury is partial, the Association shall pay the injured employee weekly compensation of sixty per cent of the difference between the average weekly wages before the injury, and the average weekly wage earning capacity during the existence of such partial incapacity, but in no case more than twenty dollars per week. The period covered by such compensation shall not be in any case greater than 300 weeks. That is if it is partial and you should find for the plaintiff for the part time that he was partially incapacitated, and then find for part time that he was totally incapacitated, the two combined, under this law could not exceed 401 weeks. The way to arrive at it, if you should undertake it—and that is entirely a matter for you, you should get the percentage of his incapacity after the

The wording thereof and the jury's answer thereto are as follows:

"If you have answered No. 2, 'Partial,' then state the percentage of such partial incapacity, to be figured as heretofore indicated.

"Thirty-five per cent."

The jury in answer to special issue No. 2 stated that the injury resulted in total disability for 7 weeks and partial disability for 300 weeks.

Appellant strenuously urges that its special issue No. 4 which the court refused to give was in keeping with the statute. That issue was as follows:

"(a) Has plaintiff, since he returned to work sustained any diminished earning capacity as a result of any actual injury sued on herein?

"(b) If so, what do you find to be the difference attributable to any actual injury sued on herein, between the plaintiff's av-erage weekly wages *at the time of the acci-dent* and his remaining earning capacity during the period of any diminished earning capacity? [Emphasis added.]

"(c) When did any such period of diminished earning capacity commence?

"(d) When did or will any such period of diminished earning capacity end?"

It is to be noted that appellant would have the court submit to the jury the difference between plaintiff's average weekly wages *at the time* of the accident and his wage-earning capacity during the period of diminished earning capacity. The statute provides for weekly compensation equal to 60% of the difference between his average weekly wages *before* the injury and his average weekly wage-earning capacity during the existence of such partial incapacity. Under the Texas statute "average weekly wages" *before* the injury refers to the average over a period of a year.[2] Appellant's

---

accident, as resulting from the accident. In other words, if it is shown that he was an able-bodied man starting out, that he was 100%, you might say he was impaired fifty per cent by the injury, that would be fifty per cent of his earning and take 60% of that and arrive at your verdict."

At the end of the general charge, the court submitted to the jury the following special issues:

"Special issue No. 1: Did plaintiff receive an accidental injury on the 16th day of June 1945, while employed by the Cochran Construction Company? Answer yes or no.

"Answer: ............

"If you answer No. 1, no, you need not answer any other questions, but return your verdict into Court. If you answer, yes, then answer the following questions:

"Special issue No. 2: Did such injury result in total or partial incapacity, as those terms are heretofore defined? Answer partial or total.

"Answer: ............

"Special Issue No. 3: If you have answered, partial, then state how long he was so partially disabled, in no event to be more than 300 weeks from the beginning date of such disability. Answer in weeks or days.

"Answer: ............

"Special Issue No. 4: If you have answered No. 2 partial, then state the percentage of such partial incapacity, to be figured as heretofore indicated. Answer in percentage.

"Answer: ............

"Special Issue No. 5: If you have found that plaintiff was incapacitated by an injury to any degree, temporary or permanent, then answer what you do find was the average weekly wages of plaintiff, to be determined as heretofore indicated. Answer the amount.

"Answer: ............

"Special Issue No. 6: If you have answered No. 2 total, then answer, if in your judgment, it is temporary or permanent, as those terms are heretofore defined.

"Answer: ............

"Special Issue No. 7: As heretofore indicated, a workman might actually receive an injury, at first resulting in total disability for a time, then followed or not, by a period of partial disability. Compensation, if granted, when that is the case, can be awarded for both, remembering, however, that compensation for both together cannot exceed a total of 401 weeks.

"If you should find that plaintiff suffered both total and partial disability from the injury alleged, state when each began and the weeks or days how long each lasted. Answer total. Answer partial.

"Answer: ............

"Answer: ............"

2 § 1, Art. 8309, Rev.Civ.Stat. of Texas 1925, Vernon's Ann.Civ.St.Tex. art. 8309, § 1.

requested special issue, therefore, which would fix the average weekly wages of appellee as of the time of the accident was not in keeping with the statute and was properly refused.

Although the law compensates for loss of earning capacity, the mere fact that appellee worked and earned money after being injured is not conclusive on the issue of his capacity to work: it is evidentiary only, to be considered along with the other evidence. Traders & General Ins. Co. v. Heath, Tex.Civ.App., 197 S.W.2d 130. The jury could, and evidently did, believe appellee's testimony that he worked after his injuries not because he was able to work but under compulsion of circumstances.

The jury's answer that appellee was totally incapacitated for 7 weeks and incapacitated 35% for a period of 300 weeks, is in accord with the record, and we find no reversible error for computing plaintiff's right of recovery for partial incapacity on the percentage basis. As stated by the court in Federal Underwriters Exchange v. Price, Tex.Civ.App., 145 S.W.2d 951, 958:

"While it may be preferable to ask the jury to find in dollars and cents the difference between the average weekly wages prior to the injury and the wage earning capacity subsequent to the injury, as suggested by defendant (or better, still, to have a finding of plaintiff's average weekly wage prior to the injury and a finding of his average weekly wage earning capacity during the existence of his partial incapacity), there is no reason to believe that a different compensation rate would have resulted."

Appellant's contention that it was entitled to a special issue to fix a time when the incapacity would terminate, we think without merit.

The jury found that the average weekly wage of the plaintiff before his injury was $40.50. The allowance of $8.50 a week for partial incapacity over the 300 weeks was arrived at by taking 60% of an amount constituting 35% of $40.50, the average weekly wage. The evidence we think justifies the conclusion that before his injury the plaintiff was earning 75¢ an hour, working 9 hours a day, 6 days a week. Under the wage and hour law, basing pay on 40 hours a week with time-and-a-half for overtime, 9 hours a day for 6 days a week is 54 hours a week, and plaintiff would be entitled to be paid 40 hours at 75¢ an hour and 14 hours at time-and-a-half, or $1.12½ an hour. In other words, his average weekly earnings were $45.75, and his daily average wage, or one-sixth of $45.75, was $7.62½. Following the statutory formula and multiplying $7.62½ a day by 300 working days in the year, then dividing by 52 weeks in the year, the weekly average over a period of one year would be $43.99. The jury's finding, therefore, of $40.50 is supported by ample evidence.

We find no reversible error, and the judgment appealed from is affirmed.