## UNITED STATES FIDELITY & GUARANTY CO., Appellant,

v.

### Harris J. DORSEY, Jr., Appellee.

No. 4024.

Court of Civil Appeals of Texas.

Waco.

May 3, 1962.

Rehearing Denied May 24, 1962.

Marcus, Weller & Evans, Beaumont, for appellant.

Adams & Browne, Beaumont, for appellee.

TIREY, Justice.

This is a compensation case. The parties stipulated the weekly wages to be $110.-00, and the jury in its verdict found substantially that the claimant sustained injury in the course of his employment with the Sumner Sollitt Company as a result of an accident; that the accident resulted in incapacity to work, and that the incapacity was total, and that it began on December 4, 1957, and that such total incapacity would continue for 208 weeks from December 4, 1957; that such injury was a producing cause of such incapacity; that claimant did not and would not sustain any partial incapacity; and that he had not recovered from the effects of the injury on January 1960, at the time of the trial. The Court granted Motion for judgment and found and decreed that plaintiff was entitled to recover from appellant the sum of $4030.60 as of January 22, 1960, and that there were remaining 97 weeks of unaccrued compensation, and decreed that appellant pay the plaintiff 97 weeks' compensation at $35.00 per week in weekly installments beginning January 29, 1960, and continue until the full sum of 97 weeks' compensation had been paid to plaintiff and his attorneys. The decree also fixed the fee for his attorneys and decreed accordingly.

The judgment is assailed on 4 Points. They are to the effect that the Court erred in rendering judgment for claimant for 208 weeks at $35.00 per week, based upon the jury's findings that he had sustained total incapacity beginning December 4, 1957, and that same would continue for 208 weeks from and after that date, (1) because there is no evidence to support

such findings; (2) because the evidence is insufficient to support such findings; (3 and 4) because such findings are so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust, and for that reason appellant's motion for new trial should have been granted.

A statement is necessary. Testimony was tendered to the effect that appellee was 24 years old; that his wife worked at DuPont in Orange; that up to December 1957 he had followed pipefitting work; that he graduated from Port Neches High School; that in December 1957 he was working for Sumner Sollitt Company as a pipefitter; that he was making $3.50 per hour, working eight hours a day, five days per week, forty hours a week; that they were putting in a new grease plant; that on or about December 4, 1957 he and another man were handling a piece of pipe between twenty and thirty feet long, weighing two hundred pounds, and that the other man shoved back on the pipe and that he went over backwards into a wheelbarrow, landing in a sitting position, and that he still had the pipe on his shoulder and then rolled it off his shoulder, and that thereafter his back was hurting him and he had pain in his shoulder area and in his neck, but thought it would be all right to keep on going and that he kept on trying to work every day; that he had headaches, pain in his neck, back and shoulder which continued until he went to the doctor and the pain continued after that; that it was two weeks before he went to a doctor, which was December 17, 1957; that he told his boss about it immediately, and his doctor suggested he go to the First Aid; that he worked until December 16th, at which time he was holding up a valve and piece of pipe and felt severe pain in his shoulder, which was in the same place where the pain had been hurting on December 4th; that he went to Dr. Montgomery in Port Neches the next morning, who advised him to report it and he reported to the nurse in First Aid; that Dr. Montgomery gave him spinal manipulations and told him that he would have to stay off work until he advised him he could go back; that after two weeks the doctor sent him back to the job to do light work; that it was around the first of January when he went back out; that during the following year he tried to stay on construction jobs, doing light work; that he continued to stay under the treatment of Dr. Montgomery; that the insurance company sent him to Dr. Stephenson, who saw him three times; that he tried to stay on doing light work during the year 1958; that in 1959 he worked approximately a month or a month and a half; that he continued receiving treatments from Dr. Montgomery; that during 1958 the people on the job gave him light work; that during 1958 he averaged seeing Dr. Montgomery three times a week, in 1959 about twice a week, and that he is still seeing him. Appellee testified as to the treatments given him and testified as to having frequent headaches, pains in his shoulder, neck and back; that he worked as much as possible in 1958, at light work, and that he worked as much as three weeks out of a month in 1958, and in 1959 worked about a month or a month and a half; that in June 1959 he started a course in hair styling, but did not have a job doing it nor did he have a license for it; that the doctor said it would be best to get into something else; that in hair styling work he relies greatly on his stool, and did not know of any other work he could get into and be able to sit down and not use his back; that when asked how he felt he replied that he had a continual ache, mostly in the shoulder region, not so great in the neck, also in the lower region of the back, right arm and right leg; that he treated himself at home; that he does not sleep very well; that before he got hurt in December 1957 he could do a good day's work but now "I can't do it the way I used to" ...."Five days a week, no, sir."; He testified in part:

"Q. * * * tell the jury * * how you feel now?

"A. I'm not having any severe pains at the moment; I don't feel good, I just ache, I have just a continual ache, but at the moment I am not having a sharp pain.

"Q. Where are you having these aches?

"A. Well, mostly in the....just below the shoulder region, back there.

"Q. How about in your neck?

"A. It's not as great as that.

"Q. Now, does your shoulder, does the pain in your shoulder get worse as time goes on?

"A. Yes, sir.

"Q. How about in your neck?

"A. Yes, sir.

"Q. Where else do you have pain?

"A. In the lower region of my back.

"Q. Anywhere else?

"A. Well, it will—I will get pain in my arm and in my leg.

"Q. Which arm and which leg?

"A. My right arm and my right leg.

"Q. How about—do you have headaches or not?

"A. Yes, sir.

"Q. Can you describe to the jury how these things come on, in other words right now they are not as severe as they get?

"A. No, sir, it seems to build up, progressive you might say, just seems to get more and more, just like stretching a balloon tighter, just tightening up on me and then it will start just with a piercing pain that will come with it.

"Q. Are the most severe pains in your right shoulder, in the neck and in the lower part of your back?

"A. Yes.

"Q. Do those things just come on and keep building up and then what do you finally do, do you—

"A. I go to the doctor.

"Q. Does that give you temporary relief?

"A. Right at the moment it doesn't it takes a little time for it to relax, it makes it kind of sore and then it seems to help me quite a bit.

"Q. What do you do at home for treatment for yourself, or your wife do for you?

"A. Oh, I sleep on a heating pad and I have a Niagara vibrator that I have my wife use on me, plus massaging and use Bengue and sometimes if I haven't got that I will use Vicks.

\* \* \* \* \* \*

"Q. Before you got hurt in December 1957 did you go out and hustle pipe, pig iron and stuff and give a man a good day's work every day, before December 1957?

"A. Before, yes, sir.

"Q. You tell this jury you can't do it now?

"A. No, sir, I can't do it the way I used to.

"Q. Well, can you do it at all, can you get out and do it eight hours a day, five days a week?

"A. Five days a week, no sir.

"Q. When you don't do any heavy work at all, you still get these pains that build up there, that get worse in your back, the lower part of your back and up in your neck and shoulder, and when you don't do any heavy work— you say you only worked about a month in 1959?

"A. Yes, sir.

"Q. Do they still build up and you still have to go down there to get adjustments?

"A. Yes, sir."

As we read the testimony the claimant made an effort to get light work throughout the year 1958; that he had several different jobs, and that he was aided in securing these jobs by his father and an uncle, and that in making application for these jobs he at one time stated substantially that he had no injury, and he further stated that he did so because he felt like it was necessary for him to work, and in effect, that he had to work although his wife was making a salary wherein her take-home pay was approximately $259.00 per month. He further testified to the effect that if he got two treatments per week from Dr. Montgomery he could make a work-week all right even though he had pain. The medical evidence was to the effect that Dr. Stephenson saw the claimant three times for the insurance company, and he stated he never found anything on either of these three times "I examined him." Dr. Montgomery testified to the effect that he had been treating plaintiff for some 10 years, and that plaintiff had nothing wrong with him prior to December 4, 1957; that x-rays were made of the cervical and thoracic regions; that they showed a break in the curvature and the rotation at the level of the 5th and 6th dorsal vertebrae which is abnormal; that the first vertebra of the spine where the skull fits, is rotated right 4 degrees with relation to the bone of the skull which is abnormal; that this will cause pain, pinch nerves, and impinge on the spinal column; that the odontoid process or second vertebra is 4 degrees out of line which is abnormal and will produce pain; that the spinous process of the axis is rotated to the right 6 degrees which is abnormal and painful; that claimant had a whiplash injury to his neck; that a whiplash could be caused by the method in which he was injured; that the x-ray films of January 1960 still showed the conditions existing; that the first vertebra was 3 degrees abnormally forward; that claimant had abnormality in the right sacroiliac joint; that his right shoulder was lower than the left; that all the abnormalities are calculated to be painful and were still present in January of 1960; that claimant saw Dr. Montgomery 76 times between December 1957, and the end of 1958, and 33 times in 1959; that treatment would be necessary in the future for the duration of claimant's life; that plaintiff was advised to get out of the pipefitting work.

The Court in its charge instructed the jury: "By the term 'total incapacity' or 'total disability', as used in the Workmen's Compensation Law, does not imply an absolute disability to perform any kind of labor, but a person disqualified from performing the usual tasks of a workman in such a way as to enable him to both obtain and retain employment is ordinarily regarded as totally incapacitated." That definition is not here assailed and is substantially in the same language as the definition contained in the Charge approved by our Supreme Court in Texas Employers' Insurance Association v. Mallard, 143 Tex. 77, 182 S.W.2d 1000, Point 1. Appellant in its brief states that it "is fully aware that under the Texas decisions a compensation claimant is not necessarily precluded from recovering for total disability even though he continues to work and earn money, following an injury, even at higher wages", and cites Texas Employers' Insurance Association v. Mallard, Tex. Civ.App., 192 S.W.2d 302; Great American Indemnity Company v. Segal, 229 F.2d 845, (5th Cir.Ct.). See also Associated Indemnity Corp. v. Potts, 5 Cir., 164 F.2d 1002; Penn. Threshermen and Farmers Mut. Cas. Co. v. Gloff, 5 Cir., 238 F.2d 839; Choate v. American Motorist Ins. Co., Tex.Civ. App., 323 S.W.2d 188; Muro v. Houston Fire & Cas. Co., Tex.Civ.App., 310 S.W.2d 420, n. r. e.; Traders and Gen. Ins. v. Heath, Tex.Civ.App., 197 S.W.2d 130, but states in effect that it is of the view that this cause should be reversed and remanded, because the verdict of the jury is against the

great weight and preponderance of the evidence, and cites a recent case of Texas Employers' Ins. Assn. v. Vineyard, Tex. Civ.App., 316 S.W.2d 156, n. w. h. Appellant says that the Court there applied the wholesome principle, which is that incapacity to perform one's usual occupation does not amount to total permanent incapacity and that where it is shown the employee is able to obtain lucrative employment calling for lighter duties than his former employment, a finding of total incapacity should not be allowed to stand. We have read the Vineyard case very carefully and do not believe it is controlling here. In the case at bar the evidence is without dispute that the claimant had a good work-record before he sustained the accident and injuries complained of, and that he was doing his work without any complaint of pain in his back, neck or anywhere else. Since the accident we have his work-record, which is without dispute, and we find him going back to work immediately after the accident and working on the job for a period of eleven days before he went to his doctor; that he continued to work approximately most of the time throughout the year 1958, and he said he was in pain substantially all the time, and that he had to go to his doctor approximately three times each week in order to be able to hold on to a job. The evidence is also without dispute that those with whom he worked had known of the accident, and knew he was having pain, and that they, as far as they could, protected him and helped him. When the work would run out on one job he would seek another and was aided by his father and his uncle, and at one time it is without dispute that he falsified to the company that he had not been in an accident in order to obtain a job. There is nothing in the testimony of the claimant to indicate that he was malingering, but on the contrary, it is without dispute that he was going against his doctor's advice in trying to do the work insofar as doing heavy work, and that the employee made a consistent effort to stay on the job and do the work, notwithstanding he was in pain in so doing, and was taking treatment from his doctor every week. Moreover, he continued to seek work, and tried to work in this condition during a part of the year 1959. This persistent work-record of the plaintiff is free from suspicion and contradiction, and no doubt the jury was impressed with his testimony. We have considered the testimony very carefully, and we are of the view that it has a "ring" of sincerity. It is true that appellant's doctors testified to the effect that they found by their examination nothing to indicate permanent or partial disability but the jury chose to follow the testimony of the claimant and his physician. Our Supreme Court in Hood v. Texas Indemnity Ins. Co., 146 Tex. 522, 209 S.W.2d 345, reannounced the following Rule in Texas: "Opinion testimony does not establish any material fact as a matter of law". See also Consolidated Cas. Ins. Co. v. Baker, Tex.Civ.App., 297 S.W.2d 706, n.r.e., and cases there cited.

We have carefully reviewed all the testimony shown by this record and we cannot honestly say that the verdict of the jury is so against the great weight and preponderance of the evidence as to be manifestly unjust. See In re King's Estate, 150 Tex. 662, 244 S.W.2d 660. See also "No Evidence" and "Insufficient Evidence", by Justice Calvert, (Reprint from April, 1960, 30 Tex. L.Rev. 803). It is our view that since the employee did sustain an injury in the course of his employment that a consideration of all the evidence tendered under all the facts and circumstances surrounding the employee as shown by the record is that the preponderance of the evidence, under all the facts and circumstances here shown, supports the jury's verdict. It follows that each of Appellant's Points is overruled. Appellant and appellee each have cited and discussed many leading cases covering the factual situations similar to the case at bar, but we believe that the record here presents only the issue of sufficiency of the evidence, and we see no reason to write further on this matter because of the view heretofore expressed.

The Judgment of the Trial Court is in all things Affirmed.